# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                    Court File No.'s:

    Richland Farms Partnership,      Case No.  19-30153
    Richland Farms, Inc.,            Case No.  19-30424
    Sixta Farms, LLC,                Case No. 19-30528
    Richland Eggs, Inc.,             Case No. 19-30529
    Richland Agronomy, Inc.,         Case No. 19-30548


          Debtors.           Chapter 11 Cases

                                    Jointly Administered Under
                                    Case No. 19-30153

## DISCLOSURE STATEMENT
### August 16, 2019

Erik A. Ahlgren, attorney # 191814
Ahlgren Law Office, PLLC
220 W. Washington Avenue
Fergus Falls, MN 56537
(218) 998-2775
erik@ahlgrenlawoffice.net

Robert L. Russell, attorney # 94523
220 W. Washington Avenue
Fergus Falls, MN 56537
(218) 998-6400
robert@russelllawoffice.com

**Attorneys for Debtors**

# TABLE OF CONTENTS

I.  INTRODUCTION......................................................................................................................... 2
    A.  PURPOSE OF THE DOCUMENT.............................................................................. 2
    B.  DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING... 2
    C.  DISCLAIMER......................................................................................................... 3

II.  BACKGROUND......................................................................................................................... 3
    A.  DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS................................... 3
    B.  INSIDERS OF THE DEBTOR..................................................................................... 5
    C.  MANAGEMENT OF THE DEBTOR........................................................................... 5
    D.  EVENTS LEADING TO THE CHAPTER 11 FILING...................................................... 5
    E.  SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE ........................................ 6
    F.  PROJECTED RECOVERY OF ADVOIDABLE TRANSFERS............................................ 7
    G.  CLAIMS OBJECTIONS............................................................................................. 8
    H.  CURRENT AND HISTORICAL FINANCIAL CONDITIONS............................................ 8

III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY
    INTERESTS................................................................................................................. 8
    A.   WHAT IS THE PURPOSE OF THE PLAN OF REORGANIZATION............................... 8
    B.  UNCLASSIFIED CLAIMS.......................................................................................... 8
    C.  CLASSES OF CLAIMS.............................................................................................. 11
    D.  MEANS OF IMPLEMENTING THE PLAN................................................................. 20
    E.  RISK FACTORS....................................................................................................... 20
    F.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES............................................... 22
    G.  TAX CONSEQUENCES OF PLAN............................................................................. 22

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES............................................................. 23
    A.  WHO MAY VOTE OR OBJECT................................................................................ 23
    B.  VOTES NECESSARY TO CONFIRM THE PLAN......................................................... 25
    C.  LIQUIDATION ANALYSIS........................................................................................ 25
    D.  FEASIBILITY.......................................................................................................... 25

V.  EFFECT OF CONFIRMATION PLAN........................................................................................... 27
    A.  DISCHARGE OF DEBTOR....................................................................................... 27
    B.  MODIFICATION OF PLAN...................................................................................... 27
    C.  FINAL DECREE...................................................................................................... 27
    D.  DEFAULT.............................................................................................................. 28

Exhibit A: Historical Financials
Exhibit B: Cash Flow Projections
Exhibit C: Liquidation Analysis

**I. INTRODUCTION**

On April 24, 2019, the court issued an order authorizing the joint administration of Richland Agronomy, Inc., Case No. 19-30548, Richland Eggs, Inc., Case No. 19-30529, Richland Farms, Inc., Case No. 19-30424 Richland Farms Partnership, Case No. 19-30153, and Sixta Farms, LLC, Case No. 19-30528 (jointly, the "Debtors"). This is the disclosure statement (the "Disclosure Statement") in the jointly administered chapter 11 cases of the Debtors. This Disclosure Statement contains information about the Debtors and describes the Plan of Reorganization (the "Plan"). A full copy of the Plan accompanies this Disclosure Statement. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

**A. Purpose of This Document**

This Disclosure Statement describes:

- The Debtors and significant events during the Debtors' bankruptcy cases,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Debtors believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Confirm the Plan*

The time and place of the hearing at which the Court will determine whether to approve this Disclosure Statement and confirm the Plan is identified in the Order accompanying this Disclosure Statement.

2. *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot to **Clerk of Bankruptcy Court, 316 North Robert Street, St. Paul, Minnesota 55101**. See section IV.A. below for a discussion of voting eligibility requirements.

**ALL BALLOTS MUST BE RECEIVED NO LATER THAN THE DATE LISTED ON THE ATTACHED ORDER OF THE COURT. NO BALLOT RECEIVED AFTER THAT DATE WILL BE COUNTED IN DETERMINING WHETHER THE PLAN SHOULD BE CONFIRMED.**

3. *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to the adequacy of this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Debtor's counsel in accordance with the deadlines to be set forth in any Order of this Court.

4. *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact either(i) Erik A. Ahlgren at 218-998-2775 or erik@ahlgrenlawoffice.net, or (ii) Robert L. Russell at 218-998-6400 or robert@russelllawoffice.com.

**C. Disclaimer**

***The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.***

**II. BACKGROUND**

**A. Description and History of the Debtor's Business**

The Debtors have historically farmed between 6,000 and 7,000 acres of soybeans and corn in Southwest, Minnesota.  Richland Farms Partnership is the umbrella organization through which the Debtors' farming operations have been run since approximately 1999. Richland Farms Partnership is a partnership consisting of Richland Farms, Inc. and Richland Eggs, Inc.  The Richland Farms Partnership has also utilized Sixta Farms, LLC and Richland Agronomy, Inc. to operate portions of their combined farming operation.  Randy and Lisa Sixta are the sole owners, officers and directors of each of the Debtors.

The reorganized debtors intend to farm approximately 3,000 acres on a current and future basis.  The Debtors own a total of 1,100 acres and lease the remainder.  The average lease rent is approximately $215 per acre.

In 2019, the Debtors will farm 3,033.96 acres, of which 1,042.92 acres will be planted with corn and 1,991.04 acres will be entitled to prevented planting insurance coverage as a result of wet field conditions. Prevented planting coverage provides producers protection in the event they are unable to plant an insured crop by the final planting date or during the late planting period due to an insured cause of loss. Prevented planting must be due to an insured cause of loss that is general in the surrounding area and that prevents other producers from planting acreage with similar characteristics. When adverse weather prevents planting, a prevented planting payment is made to compensate for the

producer's pre-planting costs generally incurred in preparation for planting the crop. The Debtors expect the prevented planting coverage will provide a payment of approximately $325 - $330 per acre. In 2019, the Debtors also expect a payment through the USDA's Market Facilitation Program, which is intended to assist farmers hurt by trade disruptions prompted by foreign retaliatory tariffs on their products.

In addition to farm income, the Debtors currently expect four wind towers to be built on its property pursuant to the Option Agreement and Wind Farm Easement the Debtors entered into with Boulevard Associates. LLC ("Operator") relating to the wind-powered electrical power generation and transmission project known as the "Buffalo Ridge Wind Energy Center" to be located in Lincoln County, Minnesota ("Wind Farm"). The initial option term during which Operator may exercise its option to acquire the easements is twenty-four (24) months; the extended option term allows Operator to extend the term by twelve (12) months, which option may be exercised a single time.

Both Richland Farms, Inc. and Richland Eggs, Inc. will receive a one-time amount of: (i) $10,000 in consideration for signing the agreement; (ii) $5,000 in consideration for signing this agreement after ten (10) days and on or before fifteen (15) days from receipt of the agreement; or (iii) $1,000 in consideration for signing this agreement after fifteen (15) days from receipt of the Agreement ("Signing Bonus"). The Signing Bonus is not credited against other payments to be made to the Debtor under the Agreement. The Signing Bonus will be paid upon the earlier of (i) the date thirty (30) days after the date that the agreement is mutually executed or (ii) the date that is ninety (90) days after the Debtor executes the agreement. In addition, the Operator will pay each Debtor a one-time amount of $750 as reimbursement for consultant fees, to be utilized in the Debtor's sole discretion ("Consultant Fee"). The Consultant Fee shall be paid to the Debtor upon the earlier of (i) the date thirty (30) days after the date that the agreement is mutually executed or (ii) the date that is ninety (90) days after the Debtor executes the agreement.

In addition to signing bonuses, both Richland Farms, Inc. and Richland Eggs, Inc. will be entitled to ongoing annual option payments in return for granting the Operator an option to acquire easements over their land. As initial consideration for the granting of the option, Operator agrees to pay both entities an annual option payment equal to $1,000 (the "Option Payment"). The initial Option Payment shall be paid by Operator to the Debtor within thirty (30) days after the effective date of the agreement. Thereafter, the annual option payment shall be made on or before each anniversary of the effective date of the wind tower agreement unless Operator elects to terminate the Option.

If Operator exercises its option to acquire the easements, each Debtor will be entitled to annual installment payments based upon the greater of the following three (3) scenarios: (i) $5,000.00 per 1.0 Megawatt ("MW") of nameplate capacity of any turbine(s) located on the Debtor's Property, increased at a rate of two percent (2%) per calendar year each year after the initial year of the easement term; (ii) 3.0% of the gross revenues as defined and calculated in accordance with the applicable formula and other terms set forth in the proposed agreement; or (iii) $18.75 per acre subject to any of the easements (including property subject to only the wind non-obstruction easement), increased at a rate of two percent (2%) per calendar year .

Although there is no guarantee that any wind towers will be built on the Debtors' property, based on the staking of the Debtors' property, it appears that four wind towers will be built on its property. It is projected that the Debtors will receive annual payments of $14,000 per wind tower built on the

Debtor's property. In addition, the Debtor will be entitled to $18.75 for wind easements. Based on 861 acres, the Debtors project revenues of $16,143.75 from the wind easements. In total the Debtors project annual revenues of $72,143.75 from the wind tower project. It is projected that each wind tower located on the Debtor's land will take approximately 0.56 acres of land out of agricultural production for the life of the project.

If Operator's activities on the Debtor's Property disturb or damage the Debtor's property or any improvements on the Debtor's property, Operator shall promptly restore the condition of the Debtor's Property to its condition prior to Operator's activities, at Operator's expense. Damage to crops or improvements by Operator or its contractors shall also be repaired, or the costs reimbursed to Debtor, in accordance with the terms of the Option Agreement and Wind Farm Easement.

Cash flow projections for 2019 and future years are included on Exhibit B.

**B. Insiders of the Debtor**

Randy and Lisa Sixta are the sole owners, officers and directors of each of the Debtors, and will be considered insiders with respect to each of the Debtors pursuant to 11 U.S.C. §101(31). In addition, because each of the Debtors have common operations and ownership, as well as common officers, managers and governors, all Debtors are affiliates, as provided by 11 U.S.C. §101(2)(A) and (B).

**C. Management of the Debtor**

Randy and Lisa Sixta, as the sole owners, officers and directors of each of the Debtors, will remain responsible for the management of the Debtors after the effective date of the order confirming the Plan. The Debtors do not anticipate adding any management personnel in the foreseeable future.

**D. Events Leading to Chapter 11 Filing**

The Debtors' financial struggles started approximately 3-4 years ago when commodity prices fell, but input prices remained constant. Prior to that, when commodity prices were stronger, the Debtors had expanded their farming operations, buying additional land and equipment.

Through the present reorganization, the Debtors are reducing the scope of their farming operations from 6,000 – 7,000 acres down to about 3,000 acres. The Debtors are also implementing a zone tillage program to reduce their labor, fuel and equipment costs. Zone tillage, also called zone building or strip tillage, is one form of reduced tillage that is essentially a compromise between conventional tillage and a no till system. When using zone tillage, the producer creates a 6-10 inch wide planting strip while leaving all other soil undisturbed. Tillage accelerates the breakdown of soil organic matter, makes soil more susceptible to erosion, and may create a plow pan or compaction layer. Zone tillage is a reduced tillage system that leaves the majority of soil is undisturbed allowing for soil organic matter buildup and this will improve soil structure over time. However, one of the primary benefits of zone tillage is that it requires less labor, fuel and equipment. For the Debtors in the present case, it will allow the farming of their currently proposed 3,000 acres using just Randy and Lisa Sixta with the help of just one part time hired hand.

The Debtors believe that, through the proposed plan of reorganization and the changes in their operation, they will be able to return to operating a stable and profitable farming operation.

**E. Significant Events During the Bankruptcy Case**

The petitions commencing these Chapter 11 cases were filed on the following dates:

|  | Case No. | Filing Date |
|---|---|---|
| Richland Agronomy, Inc. | 19-30548 | 2/27/19 |
| Richland Eggs, Inc. | 19-30529 | 2/26/19 |
| Richland Farms, Inc. | 19-30424 | 2/14/19 |
| Richland Farms Partnership | 19-30153 | 1/18/19 |
| Sixta Farms, LLC | 19-30528 | 2/26/19 |

The Debtors continue to operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No bankruptcy trustee or examiner has been appointed in the Debtors' Cases. To date, no creditor or other official committee has been appointed pursuant to § 1102 of the Bankruptcy Code.

On April 24, 2019, the court issued an order authorizing the joint administration of the Debtors' cases.

Through mediation conducted by Bankruptcy Judge William Fisher, the Debtors (Richland Farms Partnership, Richland Farms, Inc. and Richland Eggs, Inc.) and Plains Commerce Bank negotiated a stipulation to use cash collateral providing:

(a)     The value of the lien of Plains Commerce in the Debtors' pre-petition crops, and crop proceeds is projected to be $1,929,567.00, including pre-petition crop proceeds and/or crop proceeds checks in the sum of $600,790.00. The crops and crop proceeds, other than $24,320.00 utilized to pay land rents, are to be sold and the proceeds remitted to Plains Commerce Bank. Certain portions of the Debtor's equipment and real property is also expected to be sold, with the proceeds remitted to Plains Commerce.

(b)     The Debtor, Richland Farms Partnership, will be allowed to utilize up to $963,983.21 of the cash collateral of Plains Commerce to pay operating expenses in accord with the budget annexed thereto.

(c)     Plains Commerce will receive adequate protection payments equal to:

    i.     Depreciation calculated at the rate of 10% per annum on the value of its lien in the machinery and vehicles, the value of said lien being in the amount of $1,537,139.00;

    ii.     Post-petition interest accruing at the non-default rate stated in the Notes.

(d)     Because the Debtor is unable to make periodic payments for adequate protection, the Debtors grant to Plains Commerce Bank replacement liens in the Debtor's 2019 Crops, 2019 crop insurance payments and 2019 government agricultural program payments. Such liens shall have the same validity, priority, dignity, and effect as pre-petition liens asserted by Plains Commerce Bank in the pre-petition property of the Debtor. Upon liquidation of the above collateral, the Debtors will immediately make payments to Plains Commerce to pay, up to date, the adequate protection amounts due. To the

extent the Debtors grant of a security interest in 2019 crops, 2019 crop insurance payment and 2019 government agricultural program payments is not sufficient to pay all adequate protection payments to Plains Commerce and to reimburse Plains Commerce for the Debtors' usage of the cash collateral of Plains Commerce, Plains Commerce will be allowed a super priority administrative expense claim under 11 U.S.C. §§ 503 and 107 in the Debtors' cases.

(e)     Debtors will execute nonmerger deeds (hereinafter the "Deeds") and bills of sale (hereinafter the "Bills of Sale") in form acceptable to Plains Commerce conveying the Real Property Collateral and Personal Property Collateral to Plains Commerce. Upon certain enumerated defaults by the Debtors, and after written notice to the Debtors, or if the Debtors are not able to obtain confirmation of plans of reorganization (or a plan of reorganization if the cases are substantively consolidated) by November 1, 2019, Plains Commerce shall be entitled to demand turnover of the Deeds and Bills of Sale from its attorney to record the same so as to vest title to the Real Property Collateral and Personal Property Collateral in Plains Commerce Bank.

(f)     In the event of default under the terms of this Stipulation, Plains Commerce will provide written notice of default to Debtors and Debtors' counsel. If the default is not cured within ten (10) days of the date of the written notice, the Debtors' right to use cash collateral will terminate and Plains Commerce may request delivery of the Deeds and Bills of Sale.

(g)     Absent default by the Debtors under the terms of this Stipulation, and/or the inability of the Debtors to obtain confirmation plans of reorganization, (or a plan of reorganization if these cases are substantively consolidated) by November 1, 2019, Plains Commerce will not file any additional motions to lift stay in the above-entitled bankruptcy cases, or pursue claims against any non-filing obligors or guarantors with respect to the obligations due under the notes owed to Plains Commerce.

The above stipulation has since been amended to increase the Debtors' allowed use of cash collateral by $82,000 from $963,981.21 to $1,045,981.21 based on moving 500 acres from the production of soybeans to the production of corn, which will require increased seed and fertilizer expense. The Debtors believe that producing more corn, and reducing the number of acres of soybeans, will be more profitable based on the continued depressed price for soybeans based on the unresolved trade disputes with China and the national inventory of soybeans carrying over from 2018.

The Debtors have also obtained approval of motions to assume farmland leases, sell certain equipment and to enter into the option agreement and wind tower easements described in Section II.A above.

**F. Projected Recovery of Avoidable Transfers**

To date, Plains Commerce Bank has received $436,837.84 in checks from Sixta Farms, LLC, which assets are not secured by the bank. The checks received to date are as follows:

- 4/15/2019   $7,895.98         MNSP
- 5/31/2019   $208,452.56     CARGILL
- 7/16/2019   $15,564.36       ADM
- 7/18/2019   $9,516.70         ADM

- 7/22/2019  $11,516.28      ADM
- 7/25/2019  $140,000.00    CARGILL
- 7/30/2019  $6,913.36       ADM
- 7/30/2019  $26,664.30     CARGILL
- 7/31/2019  $10,314.30     ADM

The Debtors anticipate that these unsecured funds will be applied in a manner as directed by Sixta Farms, LLC.  To the extent that the Bank refuses to apply them as directed by Sixta Farms, LLC or return them to Sixta Farms, LLC, it may be necessary to bring an avoidance action under 11 U.S.C. §549. The Debtors are not aware of any other potential avoidable transfers.

To the extent there are any avoidance claims, pursuant to 11 U.S.C. §§ 105 and 1123(b)(3), the Debtors will have the full power, authority, discretion and standing to prosecute, settle, release, compromise, enforce, or otherwise resolve all avoidance actions, with the net proceeds derived therefrom, if any, being distributed to the holders of allowed claims in Class 2 of the Plan.

**G. Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in the Plan.

**H. Current and Historical Financial Conditions**

The Debtors current and historical financial statements are attached as Exhibit A.

Copies of the Debtor's periodic operating reports filed since the commencement of the bankruptcy case may be obtained by from Erik A. Ahlgren, attorney for Debtor, at 218-998-2775 or erik@ahlgrenlawoffice.net.

**III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A. What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B. Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such,

the Plan Proponent has *not* placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees | $96,310.00 (through plan confirmation) | There are $36,310.83 in approved but unpaid professional fees. The Debtors anticipate an additional $60,000.00 in professional fees to be incurred through the confirmation date. Professionals have agreed to be paid as cash flow allows. |
| Clerk's Office Fees | $0 | Paid in full on the effective date of the Plan |
| Other administrative expenses | $0 | Debtors estimate $404,163.00 in cash collateral a maximum projected adequate protection payment of $434,579. Both will be paid as a secured claim prior to confirmation if the parties agree on the amounts or immediately following a court determination of the amount. |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the effective date of the Plan |
| TOTAL | $96,310.00 | |

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present

value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the priority tax claims. All priority tax claims, in accordance with §1129(a)(9), will be paid in equal annual installments over a period of no more than 60 months.

| Debtor | POC | Proposed Treatment |
|---|---|---|
| Richland Farms Partnership, Bky #19-30153 | Internal Revenue Service – POC #7-2. | This priority tax claim will be paid the amount of its allowed claim of $3,575.36 plus interest at the rate of 4% per annum in an annual installments of $790.20 commencing December 31, 2019 or the Effective Date of the Plan, whichever is later, and future installments of $790.20 due on December 31 of 2020, 2021, 2022 and 2023. The remaining portion of its claim will be paid as an unsecured claim |
| | Minnesota Department of Employment and Economic Development – POC #5-1. | This priority tax claim will be paid the amount of its allowed claim of $8,541.00 in annual installments of $1,887.60 with the first plan payment due on December 31, 2019 or the Effective Date of the Plan, whichever is later, and future installments of $1,887.60 due on December 31 of 2020, 2021, 2022 and 2023. |
| Richland Farms, Inc. Bky #19-30424 | Internal Revenue Service – POC #1. | This priority tax claim will be paid the amount of its allowed claim of $1,213.08 in full on December 31, 2019 or the Effective Date of the Plan, whichever is later. |
| Richland Eggs, Inc. Bky #19-30529 | Internal Revenue Service – POC #3. | $0.00 |
| | Minnesota Department of Revenue – POC #2 | The total claim is $230.59, of which $207.91 is entitled to priority. The total claim will be paid in full on December 31, 2019 or the Effective Date of the Plan, whichever is later. |
| Richland Agronomy, Inc. Bky #19-30548 | Internal Revenue Service – POC #2-1. | $0.00 |
| Sixta Farms, LLC Bky #19-30528 | Internal Revenue Service – POC #1-2. | $0.00 |
| TOTAL | $13,559.95 | |

**C.**     **Classes of Claims**

All classes of claims are deemed to be impaired.  The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.     *Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate to the extent allowed as secured claims under § 506 of the Code.  All secured claims are described in Article III of the Plan, with each claim separately classed as Class 1A – 1F.  The Debtor's secured claims will be paid in full, with interest. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

**a.**     **Agco Finance LLC**.  Class 1A is the secured claim of Agco Finance, LLC, ("Agco") in the amount of $34,261.43 (Richland Farms Partnership POC #3-1). The Debtors expect to allow Agco's claim in such amount, or in such other amount as will be agreed upon by Debtors and Agco, or in such other amount as will determined by the Court to be secured pursuant to § 506 of the Code.

The Agco claim is secured by a first priority lien in an ACH 8400 Terragator, S/N A8400PCNS21024.  The Debtors believe that the ACH 8400 Terragator has a fair market value of approximately $89,000.

The above-listed indebtedness owed to Agco will be paid as follows:

    i.     Richland Farms Partnership will pay Agco $34,261.43, plus interest at the rate of 3.99% per annum, and less any adequate protection payments made by the Debtor.  The obligation will be paid in five equal annual installments of $7,571.76, with the first plan payment on December 31, 2019 or the Effective Date of the Plan, whichever is later, and future installments due on December 31 of 2020, 2021, 2022 and 2023.  On December 31, 2023, all outstanding principal and interest will be paid in full. All payments will be sent to Agco Finance LLC, P.O. Box 2000, Johnston IA 50131, or as otherwise instructed in writing by Agco.

    ii.     Agco will be entitled to a continuing security interest in the ACH 8400 Terragator, S/N A8400PCNS21024. Following the final payment, the Debtors shall own the ACH 8400 Terragator, S/N A8400PCNS21024 free and clear of any claims of Agco.

    iii.     For so long as any indebtedness remains due to Agco, Debtor will maintain the Agco collateral in good working order.

    iv.     Richland Farms Partnership reserves the right to prepay principal at any interval on this debt, without having to pay any penalty.

    v.     In the event of any default by the Debtor with respect to treatment for the claim of Agco, if the same is not cured within 30 days of written notice of default being provided to the Debtor by Agco, Agco may submit an affidavit of non-compliance to the United States Bankruptcy Court for the District of Minnesota seeking relief from the stay.  Relief from the stay may be granted unless within 10 days from the date of the filing of the affidavit of non-compliance, the Debtors object to the same on the basis that the Debtors have fully complied under the terms of this plan provision.  In the event of the filing of such an objection, an evidentiary hearing may be held on the same.

    vi.     All other terms and provisions of the Agco loan documents and security agreements stay in effect except as modified herein.

**b.** **CNH Industrial Capital America, LLC.** Class 1B is the secured claim of CNH Industrial Capital America, LLC ("CNH") in the amount of $627,000 based on proof of claim #12-1 filed in the bankruptcy case of Richland Farms Partnership, Case No. 19-30153. The Debtors expect to allow CNH's claim in such amount, or in such other amount as will be agreed upon by Debtors and CNH, or in such other amount as will determined by the Court to be secured pursuant to § 506 of the Code. CNH's claim is secured by the following assets:

| Contract No. | Make | Model | Serial Number | Estimated Value of Retained Equipment Based on POC |
|---|---|---|---|---|
| 66879 | Case Excavator | CX210 | NBSAH3563 | $75,000 |
| 65655 | Case IH S.P. Sprayer | SPX 4430 | YDT036310 | $197,000 |
| 12563 | Elmer's Transfer Tracks | L755 | TT-32414381 TT-32414379 | Turned Back to CNH |
| 15868 | Case IH Field Cultivator | 875 | YFD080682 | Turned Back to CNH |
| 99202 | Case IH Combine | 9240 | YGG230961 | $253,000 |
| | | | | $525,000.00 |

The above-listed indebtedness owed to CNH will be paid as follows:

i. The Debtor will turnover the Elmer's Transfer Tracks, Model L755 (S/N TT-32414381 and TT-32414379) and the Case IH Field Cultivator, Model 875 (S/N YFD080682) in full and final satisfaction of any secured claim on these assets.

ii. In full and final satisfaction of CNH's claims with respect to the remainder of the assets, Richland Farms Partnership will pay CNH $525,000, plus interest at the rate of 4.0% per annum. The obligation will be paid in five annual installments of $116,024.04, with the first plan payment on December 31, 2019 or the Effective Date of the Plan, whichever is later, and future installments of $116,024.04 due on December 31 of 2020, 2021, 2022 and 2023. On December 31, 2023, all outstanding principal and interest will be paid in full. Any adequate protection payments made to CNH during the course of the bankruptcy will be set off against the amount due on the first installment. All payments will reference CNH analyst number L5370375249048223001 and will be sent to P.O. BOX 71264 Philadelphia, PA 19170, or as otherwise instructed in writing by CNH.

iii. CNH will be entitled to a continuing security agreement of the same priority and position it currently holds to secure the payments due above. Following the final payment, the Richland Farms Partnership shall own the above referenced assets free and clear of any claims of CNH.

iv. For so long as any indebtedness remains due to CNH, Richland Farms Partnership will maintain all assets in good working order.

v. Richland Farms Partnership reserves the right to prepay principal at any interval on this debt, without having to pay any penalty.

vi. In the event of any default by the Debtor with respect to treatment for the claim of CNH, if the same is not cured within 30 days of written notice of default being provided to the Debtor by

CNH, CNH may submit an affidavit of non-compliance to the United States Bankruptcy Court for the District of Minnesota seeking relief from the stay. Relief from the stay may be granted unless within 10 days from the date of the filing of the affidavit of non-compliance, the Debtors object to the same on the basis that the Debtors have fully complied under the terms of this plan provision. In the event of the filing of such an objection, an evidentiary hearing may be held on the same.

vii. All other terms and provisions of the CNH loan documents and security agreements stay in effect except as modified herein.

**c.** **Deere & Company.** Class 1C is the secured claim of Deere & Company and Deere Credit, Inc. (jointly, "Deere") in the estimated aggregate amount of $221,780.55 based on the following proof of claims filed in the bankruptcy case of Richland Farms, Inc., Case No. 19-30424. The Debtors expect to allow Deere's claim in such amount, or in such other amount as will be agreed upon by Debtors and Deere, or in such other amount as will determined by the Court to be secured pursuant to § 506 of the Code. Deere's claim is secured by the following assets:

|  | Equipment | Claim | Interest Rate | Estimated Value of Retained Equipment Based on POC |
|---|---|---|---|---|
| Deere Credit, Inc. POC 3-1 | Brent 1596 Grain Cart S/N 990122 | 31,459.29 | 3.95% | 32,400 |
| Deere Credit, Inc. POC 4-1 | John Deere 2410 Chisel Plow S/N 752506 | 12,600.00 | 0.00% | 12,600 |
| Deere & Company POC 5-1 | John Deere 2210 Cultivator S/N 755357 | 14,717.22 | 3.95% | 24,700 |
| Deere & Company POC 6-1 | 2012 JD 2210 Cultivator S/N 755359 | 6,671.23 | 3.95% | 24,700 |
| Deere & Company POC 7-1 | John Deere 618C Combine Cornhead S/N 765174 | 26,204.92 | 4.15% | 99,906 |
| Deere & Company POC 8-1 | Unverferth 400 Cart S/N 130180 | 7,281.90 | 4.25% | 9,200 |
| Deere & Company POC 9-1 | John Deere BBCU Planter S/N 765106 | 114,800.00 | 3.65% | 114,800 |
|  |  | 213,734.56 |  | 318,306 |

The above-listed indebtedness owed to Deere will be paid as follows:

i. In full and final satisfaction of Deere's claims with respect to the above assets, Richland Farms, Inc. will pay Deere $213,734.56, plus interest at the rate of 4.0% per annum. The obligation will

be paid in five annual installments of $47,235.00, with the first plan payment on December 31, 2019 or the Effective Date of the Plan, whichever is later, and future installments of $47,235.00 due on December 31 of 2020, 2021, 2022 and 2023.  On December 31, 2023, all outstanding principal and interest will be paid in full. Any adequate protection payments made to Deere during the course of the bankruptcy will be set off against the amount due on the first installment.  All payments will be sent to John Deere Financial, 6400 NW 86th Street, P.O. Box 6600, Johnston, IA 50131-6600, or as otherwise instructed in writing by Deere.

    ii. Deere will be entitled to a continuing security agreement of the same priority and position it currently holds to secure the payments due above. Following the final payment, Richland Farms, Inc. shall own the above referenced assets free and clear of any claims of Deere.

    iii. For so long as any indebtedness remains due to Deere, Debtor will maintain all assets in good working order.

    iv. Debtor reserves the right to prepay principal at any interval on this debt, without having to pay any penalty.

    v. In the event of any default by the Debtor with respect to treatment for the claim of Deere, if the same is not cured within 30 days of written notice of default being provided to the Debtor by Deere, Deere may submit an affidavit of non-compliance to the United States Bankruptcy Court for the District of Minnesota seeking relief from the stay.  Relief from the stay may be granted unless within 10 days from the date of the filing of the affidavit of non-compliance, the Debtors object to the same on the basis that the Debtors have fully complied under the terms of this plan provision.  In the event of the filing of such an objection, an evidentiary hearing may be held on the same.

    vi. All other terms and provisions of the Deere loan documents, and security agreements stay in effect except as modified herein.

**d.** **Plains Commerce Bank.** Class 1D is the secured claim of Plains Commerce Bank ("PCB").  PCB claims a total debt owed to it in the amount of $7,614,597.21 plus per diem interest accrual from and after July 26, 2019 of $1,164.8976.  PCB's claimed debt is based on the following:

| Loan No. | Balance | Per Diem Interest Accrual from and after July 26, 2019 |
|---|---|---|
| 1949 | $1,168,113.11 | $169.4771 |
| 2178 | $21,522.97 | $3.4998 |
| 2265 | $520,758.95 | $94.4073 |
| 2290 | $399,139.58 | $64.2184 |
| 2704 | $3,138,641.80 | $391.8894 |
| 2706 | $1,525,373.34 | $292.0577 |
| 3345 | $323,656.68 | $57.4729 |
| 3346 | $517,390.78 | $91.8750 |
|  | $7,614,597.21 | $1164.8976 |

The PCB claim is secured by the following assets owned by Richland Farms Partnership, Richland Farms, Inc. and Richland Eggs, Inc.:

- accounts, inventory, equipment, vehicles, furniture, fixtures, parts, tools, instruments, chattel paper, general intangibles, documents, farm products, government agricultural program payments, deposit accounts, and proceeds (collectively the "Personal Property Collateral"); and

- real property located in the County of Lincoln, State of Minnesota (collectively the "Real Property Collateral").

The Debtors estimate the fair market value of the PCB collateral, after deducting senior security interests, is $6,196,639.31. Both Sixta Farms, LLC and Richland Agronomy, Inc. have guaranteed the debt owed to PCB, but the guarantees are unsecured.

In addition to the above, pursuant to the parties' Second Amended Stipulation for Final Use of Cash Collateral filed as Doc 96 in Case No. 19-30153 (the "Cash Collateral Stipulation"), PCB has a secured in claim in the Debtor's 2019 crops, 2019 crop insurance payments and 2019 government agricultural program payments to secure the Debtor's obligation to provide adequate protection payments equal to:

a. depreciation calculated at the rate of 10% per annum on the value of its lien in the machinery and vehicles held by the Debtors, and
b. post-petition interest accruing at the non-default rate stated in the notes described above.

The secured portion of PCB's claim will be agreed upon by Debtors and PCB, or as will be determined by the Court pursuant to § 506 of the Code. The Debtors reserve the right to contest the amount of debt owed to PCB.

In addition to the return of cash collateral used and the adequate protection paid pursuant to the Cash Collateral Stipulation, the remaining secured indebtedness owed to PCB will be paid as follows:

i. Effective December 31, 2019, the secured portion of PCB's claim will be recapitalized as principal and reamortized over a 30-year term with interest calculated at a rate of 5% per annum with annual payments estimated at $401,270.69 based on the bank's projected secured claim of $6,196,639.31. The first plan payment will be made on December 31, 2020. Future installments will be due on December 31 of 2021, 2022, 2023, 2024, 2025 and 2026. The loan will mature and all outstanding principal and interest will be paid in full no later than December 31, 2027. All Payments will be sent to Plains Commerce Bank, 3905 W. 49th St., Sioux Falls, SD 57106, or as otherwise instructed in writing by PCB.

ii. The initial interest rate on the reamortized loan will be 5%. Effective January 1, 2024, the interest rate will be adjusted to a rate equal to the Wall Street Journal Prime Rate plus 1.0% subject to a cap of 8% and a floor of 4%.

iii. PCB will provide the Debtor with a written statement detailing the beginning principal balance, and the principal and interest installment payment due at least 28 days prior to each payment date. If there is any dispute as to the amount of the PCB claim for principal, interest, attorneys' fees or costs, the court will resolve the dispute.

iv. PCB will be entitled to a continuing security agreement of the same priority and position it currently holds to secure the payments due above. Pursuant to the terms of the parties' Cash Collateral Stipulation, PCB shall continue to hold a lien in Debtor's 2019 crops, 2019 crop insurance payments and 2019 government agriculture program payments to the extent of the Debtors' use of cash collateral of PCB and adequate protection payments. All other post-petition crops, crop insurance payments and government agriculture program payments will be free and clear of the PCB liens.

v. In the event of any default by the Debtors with respect to treatment for the claim of PCB, if the same is not cured within 30 days of written notice of default being provided to the Debtors by PCB, PCB may submit an affidavit of non-compliance to the United States Bankruptcy Court for

the District of Minnesota seeking relief from the stay as to the bank's Personal and Real Property Collateral. Relief from the stay may be granted unless within 10 days from the date of the filing of the affidavit of non-compliance, the Debtors object to the same on the basis that the Debtors have fully complied under the terms of this plan. In the event of the filing of such an objection, an evidentiary hearing may be held on the same.

e.    **United States Department of Agriculture – Commodity Credit Corporation.** Class 1E is the secured claim of United States Department of Agriculture – Commodity Credit Corporation ("CCC") in the amount of $639,673.29 based on proof of claim 6-1 filed in the bankruptcy of Sixta Farms, LLC, Case No. 19-30528. The Debtors expect to allow CCC's claim in such amount, or in such other amount as will be agreed upon by Debtors and CCC, or in such other amount as will determined by the Court to be secured pursuant to § 506 of the Code. The CCC claim is secured by the crops stored with the CCC. Based on the CCC proof of claim, the value of the crops in storage as of the date of filing was $1,185,552.18. The Debtors anticipate that Class 1E will be paid in full prior to the confirmation date of the plan.

Any unpaid indebtedness owed to CCC will be paid as follows:

i.    Sixta Farms, LLC will pay the CCC indebtedness from the proceeds of the crops stored with the CCC. The receipts from the crops will be paid to the CCC until the debt is paid in full.

ii.    The CCC will set off against any government payments owed to Sixta Farms, LLC to reduce the payments required hereunder, and Sixta Farms, LLC shall assign any future farm program payments to CCC until the debt is paid in full.

iii.    Debtor reserves the right to prepay principal at any interval on this debt, without having to pay any penalty.

iv.    In the event of any default by the Debtor with respect to treatment for the claim of CCC, if the same is not cured within 30 days of written notice of default being provided to the Debtor by CCC, CCC may submit an affidavit of non-compliance to the United States Bankruptcy Court for the District of Minnesota seeking relief from the stay. Relief from the stay may be granted unless within 10 days from the date of the filing of the affidavit of non-compliance, the Debtors object to the same on the basis that the Debtors have fully complied under the terms of this plan provision. In the event of the filing of such an objection, an evidentiary hearing may be held on the same.

v.    All other terms and provisions of the CCC loan documents and security agreements stay in effect except as modified herein.

f.    **Federal Agricultural Mortgage Corporation.** Class 1F is the secured claim of the Federal Agricultural Mortgage Corporation ("FarmerMac") in the amount of $966,592.84 as of August 14, 2019. Richland Farms, Inc. is the sole obligor on the debt. Class 1F is the secured claim of the Federal Agricultural Mortgage Corporation ("FarmerMac") in the amount of $966,592.84 as of August 14, 2019. Richland Farms, Inc. is the sole obligor on the debt. The FarmerMac claim is secured by a first mortgage in real property located in the County of Lincoln, State of Minnesota, which Mortgage, Security Agreement, Assignment of Rents and Fixture Filing was filed on October 26, 2012 as Document No. 2012-001438 with the Lincoln County Recorder and assigned to FarmerMac as evidenced by Document No. 2012-001524 filed with the Lincoln County Recorder on November 15, 2012. The maturity date of the loan is January 1, 2033.

The Debtors estimate that the fair market value of the real property collateral securing the FarmerMac claim is approximately $3,999,324.00. The current interest rate is 3.75%. Richland Farms, Inc. makes payments of $45,950.48 on January 1 and July 1 of each year. The next payment adjustment date is July 1, 2023.

The remaining indebtedness owed to PCB will be paid as follows:

      i.    Richland Farms, Inc. will continue to pay the FarmerMac obligation pursuant to its existing terms.

      ii.    FarmerMac will be entitled to a continuing security interest of the same priority and position it currently holds to secure the payments owed to it. FarmerMac does not hold any lien or security interest in the Debtor's post-petition crops, crop insurance payments or agriculture program payments.

      iii.    In the event of any default by the Debtors with respect to treatment for the claim of FarmerMac, if the same is not cured within 30 days of written notice of default being provided to the Debtors by FarmerMac, FarmerMac may submit an affidavit of non-compliance to the United States Bankruptcy Court for the District of Minnesota seeking relief from the stay as to the bank's personal and real property collateral. Relief from the stay may be granted unless, within 10 days from the date of the filing of the affidavit of non-compliance, the Debtors object to the same on the basis that the Debtors have fully complied under the terms of this Plan. In the event of the filing of such an objection, an evidentiary hearing may be held on the same.

2.    *General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The general unsecured claims of the Debtor are described in Article III, Class 2, 3 and 4 of the Plan. The deadline for filing a proof of claim in each of the Richland Debtors' cases has passed.

      **Class 2. General Unsecured Claims of Richland Farms Partnership, Richland Farms, Inc. and Richland Eggs, Inc. (the "Richland Debtors").** Class 2 consists of general unsecured claims against the Richland Debtors, including claims of unsecured creditors which are as a result of damages arising from the rejection of unexpired leases and/or executory agreements, claims resulting from the value of a secured claim being of a value less than the security held in support of such claim, and/or those secured creditors whose claims are determined to be unsecured, and claims for taxes and penalties which are not included in any other class. Included in Class 2 will be the unsecured claim of PCB. The Debtors project that the Class 2 general unsecured creditors will be comprised of the following claims:

| | |
|---|---|
| Ace Property | $177,709.00 |
| ADM Benson Quinn | $48,834.24 |
| C&B Operations | $15,039.82 |
| CNH Industrial Capital America | $637,222.18 |
| Commodity Marketing | $1,500 |
| Cooperative Energy Company | $127,825.20 |
| Dupont | $136,681.87 |

| | |
|---|---|
| Farmers Irrigation | $4,427.84 |
| Gislason & Hunter LLP | $5,219 |
| IRS | $3,111.36 |
| IRS | $582.99 |
| JD Financial | $492.97 |
| Liberty Blades, LLC | $19,660.64 |
| Manty & Associates | $3,650 |
| Midland Tire | $6,738.55 |
| Nutrien Ag Solutions | $3,290.72 |
| Pamela J. Kroese | $148,405.50 |
| PCB | $941,667.00 |
| PHI Financial Services | $527,660.45 |
| Pro-Aire | $4,402.92 |
| Rain & Hail, LLC | $190,082.00 |
| River Run Thru | $10,233.60 |
| Tyler Electric | $70,615.78 |
| Western Equip | $150,162.10 |
| Prostrollo Auto Mall | $11,588.98 |
| USDA - Farm Service Agency | $5,286.53 |
| Total | $2,310,424.24 |

PCB claims a total debt owed to it in the amount of $7,614,597.21 plus per diem interest accrual from and after July 26, 2019 of $1,164.8976. However, if this plan is confirmed, the Debtors anticipate that $6,196,639.31 of the Debtor's claim will be paid as a secured claim through Class 1D. Even though under secured, PCB will be paid its interest through the confirmation date pursuant to the Cash Collateral Stipulation. In addition, PCB will receive a projected $404,163 as a return of cash collateral and an additional projected adequate protection payment of $100,253.41 through the Cash Collateral Stipulation. While there have been additional unaccounted for payments to PCB during the course of the bankruptcy, and the Debtors reserve the right to object to PCB's claim, the Debtors believe PCB's unsecured claim will be no more than $941,667.

Treatment: Unsecured creditors will receive a total of $225,000 payable in five annual installments. The first plan payment of $25,000 will be made on December 31, 2021. Future installments of $50,000 will be due on December 31 of 2022, 2023, 2024, with the final payment of $50,000 on December 31, 2025. Sixta Farms, LLC may advance funds to Richland Farms Partnership, Richland Farms, Inc. and Richland Eggs, Inc. and will be deemed to hold a security interest in the post-petition crops of those entities to support repayment of the amounts advanced. Unsecured creditors will receive a pro rata distribution from the fund based on the percentage that each claim bears to the total Class 3 claims as of the date of distribution.

**Class 3. General Unsecured Claims of Sixta Farms, LLC.** Class 3 consists of the general unsecured claims against Sixta Farms, LLC. As of the date of filing, Sixta Farms, LLC held crops subject to the secured claim of the United States Department of Agriculture – Commodity Credit Corporation ("CCC"). Based on proof of claim 6-1 filed in the bankruptcy of Sixta Farms, LLC, Case No. 19-30528, the CCC holds a secured claim in the amount of $639,673.29. The CCC's secured claim is expected to

be paid in full through Class 1E of the plan. To date, PCB has received $436,837.84 in checks from Sixta Farms, LLC, which assets are not secured by PCB or any other creditors and will be deemed to have paid down advances made by PCB pursuant to the Cash Collateral Stipulation. Sixta Farms, LLC also holds additional grain from 2018 with an expected value of $384,114.42 and 2019 prevented planting crop insurance on 332.64 acres with an expected value of approximately $109,771.20. Other than the CCC, no creditor holds a security interest in either the Sixta Farm, LLC 2018 or 2019 crops, crop insurance payments or government agricultural payments. Sixta Farms, LLC owes the following general unsecured claims:

| | |
|---|---|
| Kroese, Pamela | $51,425.00 |
| Nichols, Cindy | 36,000.00 |
| Nichols, Robert | 23,348.00 |
| PHI Financial Services | 203,370.94 |
| Rain & Hail, LLC | 128,912.00 |
| Guaranty of PCB debt | 7,614,597.21 |
| Total | $8,240,541.94 |

Sixta Farms, LLC holds approximately $930,723.84 in unsecured assets ($436,837.84 in checks to date, additional 2018 grain with an expected value of $384,114.42 and 2019 crop insurance of $109,771.20). Upon a Chapter 7 bankruptcy liquidation, without being able to utilize the benefits of a consolidated tax group with the other debtor entities, it is anticipated that the Chapter 7 bankruptcy estate would incur taxes of approximately 30% in addition to the Chapter 7 trustee's commission of $49,786.19, leaving approximately $601,719.91 distributable.

Treatment: Unsecured creditors will receive a total of $700,000 payable in seven equal annual installments of $50,000, and a payment of $350,000 on December 31, 2027. The first plan payment will be made on December 31, 2020. Future installments will be due on December 31 of 2021, 2022, 2023, 2024, 2025 and 2026, with the final payment of December 31, 2027. Sixta Farms, LLC may advance funds to Richland Farms Partnership, Richland Farms, Inc. and Richland Eggs, Inc. and will be deemed to hold a security interest in the post-petition crops of those entities to support repayment of the amounts advanced. Unsecured creditors will receive a pro rata distribution from the fund based on the percentage that each claim bears to the total Class 3 claims as of the date of distribution.

**Class 4. General Unsecured Claims of Richland Agronomy, Inc.** Class 4 consists of the general unsecured claims against Richland Agronomy, Inc. Richland Agronomy, Inc. owns an unsecured fertilizer mixing facility with an estimated value of $77,400.00. Richland Agronomy, Inc. is a co-signor on the purchase money debt owed to Agco on the ACH 8400 Terragator. The Agco finance claim is expected to be paid in full through Class 1A. CNH has filed a proof of claim with respect to Richland Agronomy, Inc., but there is no documentation to support the CNH claim, which will be denied. The only projected claim against Richland Agronomy, Inc. is the claim of PCB, which is expected to have a claim in excess of the value of the assets of Richland Agronomy, Inc.

Treatment: Unsecured creditors will receive a total of $80,000 payable in five equal annual installments of $20,000. The first plan payment will be made on December 31, 2020. Future installments will be due on December 31 of 2021, 2022, 2023, with the final payment of December 31, 2024. Unsecured creditors will receive a pro rata distribution from the fund based on the percentage that each claim bears to the total Class 4 claims as of the date of distribution.

3.      *Equity Interest Holders*

Randy and Lisa Sixta are the equity interest holders in each of the Debtors. Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a limited liability corporation ("LLC"), the equity interest holders are the members.  The equity interest held by Randy and Lisa Sixta will be terminated on the Effective Date of the Plan, but the Sixtas will be entitled to repurchase their equity interest by paying $5,000 on December 31, 2019 or the Effective Date of the plan, whichever is later.

4.      *Claims against guarantors*

The debts recapitalized under this Plan have been guaranteed by various third parties.  Those third-party guarantees will remain in full force and effect.  However, absent default by the Debtors under the terms of this Plan, all creditors shall suspend pursuit of claims against the guarantors for recovery on the debts it is owed by Debtors during the period that such creditor is receiving payments pursuant to this Plan. The only exception to this provision is if the involved third-party guarantors do not agree to waive any statute of limitations defenses, the creditor may proceed against said third-party guarantors to recover on all or any portion of the debts for which said third-party guarantors are obligated.

**D. Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by cash flow from operations, as described in the projections attached as Exhibit B to the Disclosure Statement.  The figures, valuations or numbers in the Disclosure Statement and Plan are approximations.

After paying expenses for the 2019 expenses, the Debtors anticipate net revenues before debt service to be approximately $389,000.  In addition, to date, Plains Commerce Bank has received $436,837.84 in checks from Sixta Farms, LLC, which assets are not secured by the bank or any other creditors.  Sixta Farms, LLC also holds additional grain from 2018 with an expected value of $402,000 and 2019 prevented planting crop insurance on 332.64 acres with an expected value of approximately $109,771.20.  Any funds advanced from Sixta Farms, LLC to Richland Farms Partnership, Richland Farms, Inc. and Richland Eggs, Inc. will be secured by a lien in crops, crop insurance and government agriculture payments in order to protect the creditors of Sixta Farms, LLC.  However, to implement the plan, the Debtors will likely also need vendor financing, or private party lending to pay the required crop inputs for 2020 and future crops.  The Debtors have not yet contracted with a lender, but they anticipate being able to obtain financing that would be secured by a crop input lien.

 2. *Post-confirmation Management*

Randy and Lisa Sixta will remain primarily responsible for all of the business operations the Debtors and will continue to manage all operations.

**E. Risk Factors**

There are many risk factors that may negatively affect Debtors' proposed Plan, including the following:

1. ***Reliance on the continued management of Randy and Lisa Sixta.*** The operation of the Debtors is heavily reliant on the continued management of Randy and Lisa Sixta.  If either were to become ill or otherwise incapacitated, it is unlikely that the Debtors could continue to successfully operate without significantly increasing their labor cost.
2. ***The Debtors requires annual financing for their farming operations.*** Virtually all farming operations require substantial outside financing because they must expend large amounts of capital in the spring, and collect all of their revenues in the fall.  The Debtor intends to obtain bank financing on ordinary terms for 2020 and into the future, but there is no guarantee that they will be able to obtain financing from a bank, or from any other financing party in future years.
3. ***The Debtors require annual land leases for their farming operations.*** For the 2019 crop year, the Debtor is subleasing 1991.04 acres of land with an average rent of $215.  The Debtor anticipates leasing similar acreage in 2020 and into the future, but there is no guarantee that the Debtor will be able to obtain land leases or the required price per acre.
4. ***Weather and commodity pricing play an important role in the success of any farming operation.*** While crop insurance can reduce the risk of weather-related events and commodity pricing changes, it will never totally remove the risk of these inherently unpredictable factors.  Recent trade disputes have made commodity pricing and distribution networks even more unpredictable.
5. ***Consummation of the Plans of Reorganization is subject to creditor acceptance and approval by the Courts.*** The Debtors have operated its business and managed its assets under the supervision of the Courts since the date of petition. Before the Plans of Reorganization can be consummated, the Chapter 11 Plan of Reorganization must be accepted by at least two-thirds in dollar amount and a majority in number of the claims of classes (with certain exceptions) entitled to vote to accept or reject the Chapter 11 Plan. There can be no assurance that the Plans of Reorganization will be approved by the impaired or affected creditors, and that even if approved, the Courts will confirm the Plan of Reorganization. The failure to meet any of these conditions will delay the consummation of the Plan of Reorganization.  In the event that any class of claims entitled to vote fails to accept the Chapter 11 Plan in accordance with sections 1126(c) and 1129(a)(8) of the Bankruptcy Code, we reserve the right to request that the U.S. Court confirm the Chapter 11 Plan in accordance with section 1129(b) of the Bankruptcy Code and/or modify the Plan in accordance with its terms. While we believe that the Chapter 11 Plan satisfies the requirements for non-consensual confirmation under section 1129(b) of the Bankruptcy Code because it does not "discriminate unfairly" and is "fair and equitable" with respect to the classes that reject or are deemed to reject the Plan, there can be no assurance that the Court will reach the same conclusion. In addition, there can be no assurance that any challenge to the requirements for non-consensual confirmation will not delay the Debtor's emergence from Chapter 11 or prevent confirmation of the Chapter 11 Plan.  A failure to approve the Debtor's Plan or a modification thereof may result in a liquidation of the Debtor's assets.
6. ***The Debtors may not achieve the financial performance projected under the Plan of Reorganization.*** The financial projections in the Debtor's Plan are projections of future performance.  These projections are based on numerous estimates of values and assumptions including the timing, confirmation and consummation of the Plan in accordance with its terms, the anticipated future performance of the Debtors, industry

performance, general business and economic conditions and other matters, many of which are beyond our control and some or all of which may not materialize.

## F. Executory Contracts and Unexpired Leases

The Plan in Article V lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  The Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed as accepted will be deemed rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract is as set by order of the court.***  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

## G. Tax Consequences of Plan

The following are the anticipated tax consequences of the Plan to the Debtors and the holders of any claims.  This summary is based upon current law, which is subject to change at any time, possibly with retroactive effect.  This summary is not a complete discussion of all federal income tax consequences to the Debtors and the creditors and does not address federal income tax consequences applicable to creditors subject to special treatment under federal income tax law.  In addition, this summary does not address the tax consequences of the Plan under applicable state, local or foreign tax laws or Federal gift and estate tax laws.

**THIS SUMMARY IS INCLUDED FOR YOUR GENERAL INFORMATION ONLY AND DOES NOT CONSTITUTE A TAX OPINION OR ADVICE.  EACH CREDITOR IS STRONGLY ADVISED TO CONSULT WITH HIS/HER/ITS TAX ADVISOR, ACCCOUNTANT OR ATTORNEY TO DETERMINE THE TAX CONSEQUENCES RELATED TO THE PLAN AND HIS/HER/ITS PARTICULAR CIRCUMSTANCES, INCLUDING ANY STATE, LOCAL AND FOREIGN TAX CONSEQUENCES RESULTING FROM THE IMPLEMENTATION OF THE PLAN.**

1.      *Tax Consequences to the Debtor of the Plan.*

The Internal Revenue Code of 1986, as amended (the "IRC"), provides in Section 61(a)(12) that gross income subject to federal income tax includes income from the discharge of indebtedness.

Section 108(a)(1)(A) of the IRC specifically excludes from Federal income tax any income from discharge of indebtedness discharged under Chapter 11. Due to the applicability of the above-cited IRC Sections, the Debtor anticipates that upon the confirmation of the Plan, the Debtor will not have any federal income tax consequences related to the confirmation of the Plan. Section 108(b)(1) of the IRC provides that upon the discharge of indebtedness under IRC Section 1098(a)(1)(A), certain tax attributes including, but not limited to, net operating losses, capital losses and tax credit carry forwards may be reduced. The Debtor anticipates that this potential reduction in the tax attributes of the Debtor will not have any immediate federal income tax consequences to the Debtor upon confirmation of the Plan or on the sources of payment as provided in the Plan.

> 2. *General Tax Consequences for Creditors of Any Discharge, and the General Tax Consequences of Receipt of Plan Consideration After Confirmation.*

Upon confirmation of the Plan and its funding, a creditor may receive a distribution at the time and in the manner provided in the Plan. The tax consequences to the creditors will vary depending upon facts that are unique to each creditor including, but not limited to: (1) whether the claim is business or non-business related; (2) whether the claim relates to interest, principal, or penalty; (3) the type of claim and its origin; (4) the federal tax status of the recipient receiving the distribution under the Plan; (5) the recipient's method of accounting; (6) the recipient's prior treatment of the indebtedness including whether the recipient has deducted the claim as a bad debt for federal income tax purposes; and (7) the recipient's tax basis in the item for which a claim is being made.

**EACH CREDITOR IS SUBJECT TO DIFFERENT FACTORS THAT ARE UNIQUE AND MAY RESULT IN DIFFERENT TAX CONSEQUENCES TO EACH CREDITOR UNDER THE PLAN. DUE TO THE COMPLEXITY OF THESE FACTORS, EACH CREDITOR IS STRONGLY ADVISED TO CONSULT WITH HIS/HER/ITS TAX ADVISOR, ACCOUNTANT OR ATTORNEY TO DETERMINE THE TAX CONSEQUENCES TO THE CREDITOR UNDER THE PLAN BASED UPON HIS/HER/ITS PARTICULAR AND UNIQUE CIRCUMSTANCES.**

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

## A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

In this case, the Plan Proponent believes that all classes are impaired and that holders of claims in each of these classes are entitled to vote to accept or reject the Plan.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

> **The deadline for filing a proof of claim in this case has passed.  The deadline is based on the filing date.  Here, the latest deadline was June 24, 2019.**

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B. Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in this Section.

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "***cramdown***" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

**C. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit C.

**D. Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. In the present case, the Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date and that it will have enough cash over the life of the Plan to make the required Plan payments.

Projections showing the amount of cash on hand on the effective date of the Plan, and the sources of future cash flow are attached to this disclosure statement as Exhibit B.  ***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

The projections show a starting cash balance and ending cash balance for each month. As well as an

annual total in the far right column. The projections assume a confirmation date of November 1, 2019 and a November to November fiscal year.

When reviewing the projections, where the cash balance shows a negative, it assumes the need for input financing. In 2020, the projections assume the need for financing toward the end of February and a total required financing of $629,536 for the year. While an input financier has not yet been identified, it is expected that the Debtors will be able to obtain financing by providing a crop input lien. The financing cost is assumed at a rate of 10% per annum based on the average outstanding balance. In each year succeeding year, the date on which input financing is required is pushed further out, evidencing the Debtors' ability to increase the amount of crop inputs that can be self financed based on their improving financial health.

For purposes of demonstrating the feasibility of the plan, the Debtors will assume PCB's claimed per diem interest of $1,164.8976 and 287 days accrue between the January 18, 2019 filing date of Richland Farms Partnership and November 1, 2019 the projected date of confirmation of the Plan. Pursuant to the Cash Collateral Stipulation, the interest rate is to be calculated at the non-default rate. The Debtors believe that PCB's per diem interest has been calculated using a rate higher than allowed under the Cash Collateral Stipulation and using a principal base that does not fully account for cash paid during the course of the bankruptcy. In addition to interest, the Debtors will also pay a per diem adequate protection rate of $421.13 based on the rate of 10% per annum and $1,275,000 in machinery and vehicles after the sale or return to the secured creditor of certain pieces of machinery and vehicles. Based on the foregoing, the maximum possible adequate protection payment will be $434,579 ($334,325.61 from PCB's claimed per diem interest, plus $100,253.41 from the maximum adequate protection rate stated in the Cash Collateral Stipulation). Even though the Debtors reserve the right to dispute both the amount of the debt claimed by PCB under the loan agreements and under the Cash Collateral Stipulation, in the projections attached as Exhibit B, the projected maximum adequate protection payment of $434,579 is accounted for in November, 2019. The adequate protection payment will be made upon either the parties agreeing to the amount of the debt or a court determination of the amount of the debt.

To date, PCB has received $436,837.84 in checks from Sixta Farms, LLC, which assets are not secured by PCB. The checks received to date are as follows:

- 4/15/2019   $7,895.98       MNSP
- 5/31/2019   $208,452.56    CARGILL
- 7/16/2019   $15,564.36     ADM
- 7/18/2019   $9,516.70      ADM
- 7/22/2019   $11,516.28     ADM
- 7/25/2019   $140,000.00    CARGILL
- 7/30/2019   $6,913.36      ADM
- 7/30/2019   $26,664.30     CARGILL
- 7/31/2019   $10,314.30     ADM

The Debtors anticipate that these unsecured funds will be applied as a set off against advances under the Cash Collateral Stipulation. To the extent that the Bank refuses to apply them as directed by Sixta Farms, LLC or return them to Sixta Farms, LLC, it may be necessary to bring an avoidance action under 11

U.S.C. §549. See discussion herein at Section II.F. Pursuant to the Cash Collateral Stipulation, PCB agreed to advance crop inputs for 2019. In total, PCB has advanced approximately $841,000 to date, which amount has been partially repaid by the above described $436,837.84, leaving approximately $404,163.00 in cash collateral secured by the Debtors' 2019 crops. The projections attached as Exhibit B anticipate that the $404,163.00 in cash collateral will be repaid from the crops sold in October 2019.

As noted above, and in the Plan, the Debtors reserve the right to object to the claimed amount of debt and the amount owed as an adequate protection payment. Pursuant to the terms of the Cash Collateral Stipulation, Richland Farms Partnership turned over checks derived from 2018 crops with a face value of $537,452.38, but PCB has not provided an accounting for how those checks were applied. The Debtors have also turned over $177,459.21 from equipment sales, $448,258.30 from land sales, and $27,952 from a tillage receivable, as well as other amounts from their checking accounts. The Debtors have been unable to determine where those amounts have been applied based on the information they have access to from electronic banking accounts, and the bank has either failed or refused to provide additional information. Nonetheless, as discussed above, even assuming the accuracy of the bank's stated debts and interest accruals which appear overstated, the projections demonstrate that the Debtors' plan is feasible.

## V. EFFECT OF CONFIRMATION OF PLAN

### A. Discharge of Debtor

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Civil Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court may designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## D. Default

Except as otherwise specified in the Plan, in the event the Debtor shall default in the performance of any of its obligations under the Plan, then the holder of each affected claim may pursue such remedies as are available at law or in equity. An event of default occurring with respect to one claim shall not be an event of default with respect to any other claim. Nothing contained in the Plan shall limit the right of any party to reopen this case to seek relief if cause for such relief exists.

**DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS. YOUR VOTE IS IMPORTANT. PLEASE VOTE PROMPTLY.**

Richland Farms Partnership,
　　Case No. 19-30153

By Randy Sixta
　　President of Richland Farms, Inc.
　　Partner

Sixta Farms, LLC,
　　Case No. 19-30528

By Randy Sixta
　　Managing Member

Richland Farms, Inc.,
　　Case No. 19-30424

By Randy Sixta
　　President

Richland Agronomy, Inc.,
　　Case No. 19-30548

By Randy Sixta
　　President

Richland Eggs, Inc.,
　　Case No. 19-30529

By Lisa Sixta
　　President

Erik A. Ahlgren, attorney # 191814
Ahlgren Law Office, PLLC
220 W. Washington Avenue
Fergus Falls, MN 56537
(218) 998-2775
erik@ahlgrenlawoffice.net

Robert L. Russell, attorney # 94523
220 W. Washington Avenue
Fergus Falls, MN 56537
(218) 998-6400
robert@russelllawoffice.com

**Attorneys for Debtors**

**EXHIBIT A**

# Balance Sheet Trends

Richland Farms Consolidated

Cust. #

| Description | Balance Sheet | Balance Sheet | Balance Sheet* | Balance Sheet* | Balance Sheet* | Balance Sheet* |
|---|---|---|---|---|---|---|
| Statement Date | 12/01/2018 | 12/01/2017 | 12/01/2016 | 12/01/2015 | 12/01/2014 | 12/01/2013 |
| Cash & Equivalents | 410,895 | 118,325 | 15,067 | 235,180 | 63,321 | 132,469 |
| Accounts Receivable | 205,017 | 91,400 | 86,000 | 86,000 | 1,086,000 | 6,000 |
| Crop Inventory | 3,379,040 | 3,540,503 | 5,021,048 | 5,058,400 | 4,218,555 | 4,406,200 |
| Prepaid Expenses & Supplies | 213,687 | 267,090 | 217,117 | 187,482 | 272,060 | 2,019,458 |
| Other Current Assets | | | 27,900 | | | |
| **Total Current Assets** | **4,208,639** | **4,017,318** | **5,367,132** | **5,567,062** | **5,639,936** | **6,564,127** |
| Machinery & Equipment | 2,612,476 | 3,095,744 | 2,293,838 | 2,496,768 | 2,634,247 | 2,838,932 |
| Vehicles | 323,380 | 359,311 | 407,964 | 453,293 | 503,659 | 420,844 |
| Notes Receivable | 36,000 | 36,000 | 36,000 | 36,000 | 42,000 | 48,000 |
| Other Intermediate Assets | 94,670 | 94,670 | 174,670 | 14,670 | 14,670 | 14,670 |
| Buildings & Improvements | 171,058 | 180,061 | 2,776,688 | 2,922,828 | 3,076,659 | 3,177,536 |
| Accum. Depr.- Bldgs. & Improv.(-) | | | | | | 36,260 |
| Real Estate - Land | 9,244,752 | 9,995,847 | 8,111,900 | 3,903,960 | 3,903,960 | 3,327,960 |
| Other Long Term Assets | 1,976 | 1,976 | 295,476 | 295,476 | 295,476 | 295,476 |
| **Total Non-Current Assets** | **12,484,312** | **13,763,609** | **14,096,536** | **10,122,995** | **10,470,671** | **10,087,158** |
| **TOTAL ASSETS** | **16,692,951** | **17,780,927** | **19,463,668** | **15,690,057** | **16,110,607** | **16,651,285** |
| Accounts Payable | 1,449,249 | 950,225 | | | | |
| Current Notes Payable - Ours | 4,668,075 | 4,668,075 | 4,665,418 | 3,797,608 | 5,411,249 | 4,455,739 |
| Current Notes Payable - Other | | | | | | 568,022 |
| CCC Loans | 1,157,756 | 798,597 | 570,780 | 1,099,016 | | 267,509 |
| Cur. Portion Term Debt - Ours | 237,034 | 227,089 | 223,453 | 221,306 | 164,414 | 125,455 |
| Cur. Portion Term Debt - Other | 447,315 | 461,046 | 238,063 | 236,720 | 270,563 | 260,043 |
| Accrued Interest | 367,748 | 214,122 | 251,491 | 125,171 | 207,165 | 142,892 |
| **Total Current Liabilities** | **8,327,177** | **7,319,154** | **5,949,205** | **5,479,821** | **6,053,391** | **5,819,660** |
| Long Term Debt - Ours | 3,078,047 | 3,291,249 | 3,367,589 | 3,415,831 | 2,096,191 | 1,593,349 |
| Long Term Debt - Other | 2,171,134 | 2,348,081 | 2,155,048 | 2,157,997 | 2,350,253 | 2,589,704 |
| **Total Non-Current Liabilities** | **5,249,181** | **5,639,330** | **5,522,637** | **5,573,828** | **4,446,444** | **4,183,053** |
| **TOTAL LIABILITIES** | **13,576,358** | **12,958,484** | **11,471,842** | **11,053,649** | **10,499,835** | **10,002,713** |
| Capital | | | 501,021 | 100,015 | 100,015 | 70,355 |
| Retained Earnings | 3,116,593 | 4,822,443 | 7,490,805 | 4,536,393 | 5,510,758 | 6,578,217 |
| **EQUITY** | **3,116,593** | **4,822,443** | **7,991,826** | **4,636,408** | **5,610,772** | **6,648,572** |
| VARIANCE | | | | | -1 | |

## OUT OF BALANCE: Assets do not equal Liabilities & Equity Accounts

| | | | | | |
|---|---|---|---|---|---|
| Change In Equity | -1,705,850 | -3,169,383 | 3,355,418 | -974,364 | -1,037,799 |
| Adjustments | 777,554 | 555,937 | -4,207,940 | | |
| Earned Equity Change This Year | -928,296 | -2,613,446 | -852,522 | -974,364 | -1,037,799 |
| **EARNED EQUITY** | **242,144** | **1,170,440** | **3,783,886** | **4,636,408** | **5,610,772** |

# Income / Expense Trends

Richland Farms Consolidated

Cust. #

| Description | 2017 Tax Return* | 2016 Tax Return* | 2015 Tax Return* | 2014 Tax Return* | 2013 Tax Return* |
|---|---|---|---|---|---|
| Statement Date | 12/01/2016 - 11/30/2017 * | 12/01/2015 - 11/30/2016 * | 12/01/2014 - 11/30/2015 * | 12/01/2013 - 11/30/2014 * | 12/01/2012 - 11/30/2013 * |
| **Operating Income** | | | | | |
| Crop Sales | 4,089,248 | 3,684,020 | 3,350,798 | 3,512,793 | 4,461,276 |
| Rents | 124,096 | 135,000 | 130,513 | -16,847 | -41,166 |
| Coop Distributions | 851 | | | 598 | 72 |
| Ag Program Pmts | | 177,850 | 313,000 | | 151,665 |
| Crop Insurance Proceeds | | | 880,097 | 289,486 | 356,041 |
| Custom Hire Income | | 609,581 | 388,746 | 305,047 | 346,361 |
| Other Income | 202,276 | 277,459 | 319,914 | 114,929 | 36,932 |
| **Total Operating Income** | **4,416,471** | **4,883,910** | **5,383,068** | **4,206,006** | **5,311,181** |
| Purchases for Resale | | 598,157 | | | |
| *GROSS MARGIN* | **4,416,471** | **4,285,753** | **5,383,068** | **4,206,006** | **5,311,181** |
| **Operating Expenses** | | | | | |
| Car & Truck | | | | | |
| Chemicals | 134,564 | 4,677 | 184,639 | 52,056 | 97,455 |
| Custom Hire Exp. | 82,956 | 57,846 | 53,996 | 44,927 | 76,233 |
| Depreciation | 562,008 | 530,028 | 561,952 | 556,655 | 445,247 |
| Fertilizers & Lime | 161,386 | 343,913 | 845,287 | 31,057 | 1,366,574 |
| Freight & Trucking | 42,073 | 36,424 | 59,582 | 48,752 | 23,592 |
| Gas / Fuel / Oil | 260,807 | 201,877 | 352,098 | 424,251 | 362,274 |
| Insurance Exp. | 262,592 | 264,252 | 390,579 | 392,981 | 349,909 |
| Labor Hired | 104,680 | 107,236 | 137,488 | 156,166 | 93,062 |
| Rent - Mach / Equip / Vehicle | 264,905 | 309,334 | 368,887 | 156,025 | 165,069 |
| Rent - Land / Animals | 898,378 | 1,072,266 | 1,337,834 | 1,142,107 | 1,006,018 |
| Repairs & Maintenance | 171,776 | 166,550 | 164,612 | 117,316 | 177,837 |
| Seeds & Plants | 434,038 | 593,065 | 551,904 | 400,320 | 470,035 |
| Supplies | 71,598 | 38,546 | 44,908 | | 92,056 |
| Taxes - Real Estate | 8,040 | 35,468 | 25,168 | 75,041 | 32,609 |
| Utilities | 78,399 | 65,885 | 78,400 | 93,370 | 51,965 |
| Other Expenses | 178,750 | 471,934 | 81,532 | 64,480 | 77,628 |
| CCC Paybacks | 58,942 | | | | |
| Employee Benefits | 19,567 | 22,697 | 19,613 | 20,149 | 18,072 |
| Grain System (Richland Farms) | 139,652 | 153,100 | 61,331 | -4,411 | -66,854 |
| Grain System/Leg Expense | | | | | |
| Hedging Expense | 24,550 | 49,839 | | 7,265 | 31,424 |
| Pivot Maintenance | 13,908 | | | | 27,732 |
| Professional Fees | 32,019 | 48,488 | 46,750 | 33,446 | 43,892 |
| Operating Interest | 284,007 | 185,856 | 205,585 | 212,990 | 179,971 |
| Term Interest | 314,265 | 231,090 | 360,757 | 172,633 | 141,716 |
| **Total Operating Exp.** | **4,603,860** | **4,990,371** | **5,932,902** | **4,197,576** | **5,263,516** |
| *NET OPER. INCOME* | **-187,389** | **-704,618** | **-549,834** | **8,430** | **47,665** |
| **Non-Operating** | | | | | |
| Dividends | | 851 | | | |
| Income Taxes | 18,661 | -36,753 | 9,837 | 18,620 | 22,681 |
| Non-Farm Income | | | 12,409 | 4,575 | 129 |
| Non-Farm Expense | | | 41,067 | 41,349 | 39,218 |
| Term Principal Payment | 461,517 | 458,363 | 281,646 | 378,651 | 371,500 |

# Income / Expense Trends

Richland Farms Consolidated

Cust. #

| Description | Projection 2018 | 2017 Tax Return* | 2016 Tax Return* | 2015 Tax Return* | 2014 Tax Return* | 2013 Tax Return* |
|---|---|---|---|---|---|---|
| Statement Date | | 12/01/2016 - 11/30/2017 * | 12/01/2015 - 11/30/2016 * | 12/01/2014 - 11/30/2015 * | 12/01/2013 - 11/30/2014 * | 12/01/2012 - 11/30/2013 * |
| MARG AFTER TERM DEBT SERV. (Depreciation Added Back) | | **-105,559** | **-597,051** | **-308,023** | **131,040** | **59,642** |
| **Capital** | | | | | | |
| Capital Sales | | 7,500 | 1,500 | | | |
| **Ending Cash On Hand** | | **-98,059** | **-595,551** | **-308,023** | **131,040** | **59,642** |
| **Grand Totals** | | | | | | |
| Total Cash Inflows | | 4,423,971 | 4,885,410 | 5,395,477 | 4,210,581 | 5,311,310 |
| Total Cash Outflows | | 4,522,030 | 5,480,961 | 5,703,500 | 4,079,541 | 5,251,668 |
| **Net Cash Flow** | | **-98,059** | **-595,551** | **-308,023** | **131,040** | **59,642** |
| Beg. Cash On Hand | | | | | | |
| **Ending Cash On Hand or LOC Balance** | | **-98,059** | **-595,551** | **-308,023** | **131,040** | **59,642** |

**EXHIBIT B**

| RICHLAND FARMS CONSOLIDIATED | STARTING CASH | | | |
|---|---|---|---|---|
| SEPTEMBER - NOVEMBER, 2019 | $ 384,115.42 | $345,316.62 | $572,775.82 | |
| REVENUE/EXP BY MONTH | SEPT | OCT | NOV | TOTALS |
| | INCOME | INCOME | INCOME | INCOME |
| CORN SEALED INCOME | | | $355,009.95 | $355,009.95 |
| TRUMP AID PROJECTION | $63,000.00 | | $63,000.00 | $126,000.00 |
| CCC - CSP AND EQUIP | | | $110,600.00 | $110,600.00 |
| PREVENT PLANT PROJECTIONS | | $657,043.20 | | $657,043.20 |
| CRP INCOME | | $6,479.00 | | |
| WIND PROJECT DOWNPAYMENT | $20,000.00 | | | |
| TOTAL REVENUE | $83,000.00 | $663,522.20 | $528,609.95 | $1,275,132.15 |
| EXPENSES BY MONTH | SEPT EXP | OCT | NOV | TOTALS |
| LAND RENT | $16,150.80 | | $342,526.87 | $358,677.67 |
| SEED | | | | $0.00 |
| FERTILIZER | $46,000.00 | | | $46,000.00 |
| CHEMICALS | | | | $0.00 |
| CROP/HAIL INSURANCE | | | $75,000.00 | $75,000.00 |
| FUEL | $1,460.00 | $3,650.00 | $4,000.00 | $9,110.00 |
| REPAIRS | $2,263.00 | $5,000.00 | $0.00 | $7,263.00 |
| LABOR | $5,000.00 | $5,000.00 | $5,000.00 | $15,000.00 |
| MAC. LEASE (STRIP TILL) | $32,250.00 | | $7,500.00 | $39,750.00 |
| REAL ESTATE TAXES | | | $13,564.00 | $13,564.00 |
| FARM INSURANCE | $8,000.00 | $8,000.00 | $11,000.00 | $27,000.00 |
| UTILITIES | $1,850.00 | $1,850.00 | $2,500.00 | $6,200.00 |
| DUES & FEES | $1,625.00 | $1,200.00 | | $2,825.00 |
| MISC. | $1,200.00 | $1,200.00 | $1,800.00 | $4,200.00 |
| INCOME TAXES | | | | $0.00 |
| ANDERSON FARM PAYMENT | | | $17,151.00 | $17,151.00 |
| FARMER MAC PAYMENT | | | | $0.00 |
| JOHN DEERE | | | | $0.00 |
| CASE | $6,000.00 | $6,000.00 | $6,000.00 | $18,000.00 |
| AGCO | | | | $0.00 |
| REPAYMENT OF CASH COLLATERAL TO PCB | | $404,163.00 | | $404,163.00 |
| PROJ MAX ADEQUATE PROTECTION PAYMENT | | | $434,579.00 | $434,579.00 |
| EXPENSES BY MONTH | $121,798.80 | $436,063.00 | $920,620.87 | $1,478,482.67 |
| ENDING CASH | $345,316.62 | $572,775.82 | $180,764.90 | $180,764.90 |
| | | | | |

Repayment of Cash Collateral to PCB - The Debtors have used approximately $841,000 is cash for inputs. Of that amount
$436,837.84 has been paid from Sixta Farms, LLC unsecured funds. Accordingly, PCB's secured claim for the return of cash collateral is
estimated to be $404,163.00, which is a secured claim in the crops of Richland Farms Partnership, Richland Farms, Inc. and Richland
Eggs, Inc. (the "Richland Debtors"). In addition, the Richland Debtors have an obligation to pay adequate protection under the
Cash Collateral Stipulation. The Debtors believe that the maximum possible adequate protection payment will be $434,579 based on
the information described in greater detail in the description of the treatment of the PCB claim in Class 1D in the Disclosure Statement.

| RICHLAND FARMS CONSOLIDATED | STARTING CASH | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DEC. 2019 TO NOVEMBER 30, 2020** | **$ 180,764.90** | **$215,085.06** | **$374,558.86** | **-$3,216.29** | **-$297,869.27** | **-$313,319.27** | **-$339,269.27** | **-$354,844.27** | **-$437,476.97** | **-$483,226.97** | **-$514,952.77** | **-$629,536.57** | |
| REVENUE/EXP BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | **TOTALS** |
| DEC. 2019 TO NOVEMBER 30, 2020 | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME |
| CORN SALES | $218,022.43 | $218,022.43 | | | | | | | | | | $1,032,759.98 | $1,468,804.84 |
| GOV PAYMENTS/WIND | | $63,000.00 | | | | | | | | | $6,479.00 | $72,143.75 | $141,622.75 |
| DIVIDENDS | | $1,500.00 | | | | | | | | | | | $1,500.00 |
| REPURCHASE OF EQUITY | $5,000.00 | | | | | | | | | | | | $5,000.00 |
| **TOTAL REVENUE** | **$223,022.43** | **$282,522.43** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$6,479.00** | **$1,104,903.73** | **$1,616,927.59** |
| EXPENSES BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | |
| LAND RENT | | | | $189,376.20 | | | | | | $16,150.80 | | $251,342.75 | $456,869.75 |
| SEED | | | $292,000.00 | | | | | | | | | | $292,000.00 |
| FERTILIZER | | $55,223.15 | $55,223.15 | | | | | | | | $99,912.80 | | $210,359.10 |
| CHEMICALS | | | | $47,550.78 | | | | | | | | | $47,550.78 |
| CROP/HAIL INSURANCE | | | | | | | | | | | | $75,000.00 | $75,000.00 |
| FUEL | | | $16,602.00 | | | | | $22,026.84 | | | | | $38,628.84 |
| REPAIRS | | $5,000.00 | | | | | | | | | $5,000.00 | | $10,000.00 |
| LABOR | $4,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $5,000.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $4,500.00 | $5,000.00 | $47,000.00 |
| MACHINERY LEASES | $30,000.00 | | | $25,000.00 | | | | | $30,000.00 | | | | $85,000.00 |
| REAL ESTATE TAXES | | | | | | $12,000.00 | | | | | | $12,000.00 | $24,000.00 |
| FARM INSURANCE | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $72,000.00 |
| UTILITIES | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| DUES & FEES | | $4,125.00 | | $1,625.00 | | | $1,625.00 | $705.38 | $1,800.00 | $1,625.00 | $1,200.00 | | $12,705.38 |
| MISC. | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $15,000.00 |
| INCOME TAXES | | | | | | | | | | | | | $0.00 |
| ANDERSON FARM PAYMENT | | | | $17,151.00 | | | | | | | | | $17,151.00 |
| FARMER MAC PAYMENT | | $45,950.48 | | | | | | | $45,950.48 | | | | $91,900.96 |
| IRS | $790.20 | | | | | | | | | | | | $790.20 |
| IRS - FARMS | $1,213.08 | | | | | | | | | | | | $1,213.08 |
| MN DEED | $1,887.60 | | | | | | | | | | | | $1,887.60 |
| MNDOR | $230.59 | | | | | | | | | | | | $230.59 |
| JOHN DEERE | $47,235.00 | | | | | | | | | | | | $47,235.00 |
| CASE | $86,024.04 | | | | | | | | | | | | $86,024.04 |
| AGCO | $7,571.76 | | | | | | | | | | | | $7,571.76 |
| PROFESSIONAL FEES - ACCOUNTING | | | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $12,000.00 |
| PROFESSIONAL FEES - LEGAL | | | | | | | | | | | | | $0.00 |
| PCB | | | | | | | | | | | | | $0.00 |
| Class 2 General Unsecured Claims | | | | | | | | | | | | | $0.00 |
| Class 3 Sixta Farms Unsecured Claims | | | | | | | | | | | | | |
| Class 4 Agronomy Unsecured Claims | | | | | | | | | | | | | |
| Input Financing Cost | | | | | | | | | | | | $31,000.00 | $31,000.00 |
| EXPENSES BY MONTH | $188,702.27 | $123,048.63 | $377,775.15 | $294,652.98 | $15,450.00 | $25,950.00 | $15,575.00 | $82,632.70 | $45,750.00 | $31,725.80 | $121,062.80 | $384,792.75 | **$1,707,118.08** |
| ENDING CASH | $215,085.06 | $374,558.86 | -$3,216.29 | -$297,869.27 | -$313,319.27 | -$339,269.27 | -$354,844.27 | -$437,476.97 | -$483,226.97 | -$514,952.77 | -$629,536.57 | **$90,574.41** | **$90,574.41** |

Input financing cost calculated at a rate of 10% per annum based on the average outstanding balance

Based on the consolidated tax group, income taxes for all entities are anticipated to be subject to set off until 2021

| RICHLAND FARMS CONSOLIDATED | STARTING CASH | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DEC. 2020 TO NOVEMBER 30, 2021 | $ 90,574.41 | $110,845.81 | $277,681.33 | $210,691.54 | -$98,105.63 | -$113,555.63 | -$139,505.63 | -$155,080.63 | -$237,713.33 | -$283,463.33 | -$315,189.13 | -$432,272.93 | |
| REVENUE/EXP BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | TOTALS |
| DEC 2020 TO NOVEMBER 2021 | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME |
| CORN SALES | $600,000.00 | $306,186.15 | $306,186.15 | | | | | | | | | $1,032,759.98 | $2,245,132.28 |
| GOVERNMENT PAYMENTS | $110,000.00 | | | | | | | | | | $6,479.00 | | $116,479.00 |
| DIVIDENDS | | $1,500.00 | | | | | | | | | | | $1,500.00 |
| WIND PAYMENT | | | | | | | | | | | | $73,567.50 | $73,567.50 |
| TOTAL REVENUE | $710,000.00 | $307,686.15 | $306,186.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,479.00 | $1,106,327.48 | $2,436,678.78 |
| EXPENSES BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | |
| LAND RENT | | | | $189,376.20 | | | | | | $16,150.80 | | $251,342.75 | $456,869.75 |
| SEED | | | $304,002.79 | | | | | | | | | | $304,002.79 |
| FERTILIZER | | $55,223.15 | $55,223.15 | | | | | | | $99,912.80 | | | $210,359.10 |
| CHEMICALS | | | | $61,694.97 | | | | | | | | | $61,694.97 |
| CROP/HAIL INSURANCE | | | | | | | | | | | | $75,000.00 | $75,000.00 |
| FUEL | | $16,602.00 | | | | | | $22,026.84 | | | | | $38,628.84 |
| REPAIRS | | $5,000.00 | | | | | | | | | $7,500.00 | | $12,500.00 |
| LABOR | $4,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $5,000.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $4,500.00 | $5,000.00 | $47,000.00 |
| MACHINERY LEASES | $30,000.00 | | | $25,000.00 | | | | | $30,000.00 | | | | $85,000.00 |
| REAL ESTATE TAXES | | | | | | $12,000.00 | | | | | | $12,000.00 | $24,000.00 |
| FARM INSURANCE | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $72,000.00 |
| UTILITIES | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| DUES & FEES | | $4,125.00 | | $1,625.00 | | | | $1,625.00 | $705.38 | $1,800.00 | $1,625.00 | $1,200.00 | $12,705.38 |
| MISC. | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $15,000.00 |
| INCOME TAXES | | | | | | | | | | | | $60,483.00 | $60,483.00 |
| ANDERSON FARM PAYMENT | | | | $17,151.00 | | | | | | | | | $17,151.00 |
| FARMER MAC PAYMENT | | $45,950.48 | | | | | | | $45,950.48 | | | | $91,900.96 |
| IRS | $790.20 | | | | | | | | | | | | $790.20 |
| IRS - Farms | | | | | | | | | | | | | $0.00 |
| MN DEED | $1,887.60 | | | | | | | | | | | | $1,887.60 |
| JOHN DEERE | $47,235.00 | | | | | | | | | | | | $47,235.00 |
| CASE | $116,024.04 | | | | | | | | | | | | $116,024.04 |
| AGCO | $7,571.76 | | | | | | | | | | | | $7,571.76 |
| PROFESSIONAL FEES - ACCOUNTING | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $14,400.00 |
| PROFESSIONAL FEES - LEGAL | | | | | | | | | | | | | $0.00 |
| PCB | $401,270.00 | | | | | | | | | | | | $401,270.00 |
| Class 2 General Unsecured Claims | | | | | | | | | | | | | $0.00 |
| Class 3 Sixta Farms Unsecured Claims | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 4 Agronomy Unsecured Claims | $20,000.00 | | | | | | | | | | | | $20,000.00 |
| Input Financing Cost | | | | | | | | | | | | $13,031.50 | $13,031.50 |
| EXPENSES BY MONTH | $689,728.60 | $140,850.63 | $373,175.94 | $308,797.17 | $15,450.00 | $25,950.00 | $15,575.00 | $82,632.70 | $45,750.00 | $31,725.80 | $123,562.80 | $427,307.25 | $2,280,505.89 |
| ENDING CASH | $110,845.81 | $277,681.33 | $210,691.54 | -$98,105.63 | -$113,555.63 | -$139,505.63 | -$155,080.63 | -$237,713.33 | -$283,463.33 | -$315,189.13 | -$432,272.93 | $246,747.30 | $246,747.30 |

| RICHLAND FARMS CONSOLIDATED | STARTING CASH | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DEC. 2021 TO NOVEMBER 30, 2022 | $ 246,747.30 | $186,795.55 | $49,628.33 | $341,864.54 | $33,067.37 | $17,617.37 | -$8,332.63 | -$23,907.63 | -$106,540.33 | -$152,290.33 | -$184,016.13 | -$301,099.93 | |
| REVENUE/EXP BY MONTH | $245,534.22 | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | TOTALS |
| DEC 2021TO NOVEMBER 2022 | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME |
| CORN SALES | $600,000.00 | $306,186.20 | $306,186.21 | | | | | | | | | $1,032,759.98 | $2,245,132.39 |
| GOVERNMENT PAYMENTS | $110,000.00 | | | | | | | | | | $6,479.00 | | $116,479.00 |
| DIVIDENDS | | $1,500.00 | | | | | | | | | | | $1,500.00 |
| WIND PAYMENT | | | | | | | | | | | | $75,038.85 | $75,038.85 |
| TOTAL REVENUE | $710,000.00 | $307,686.20 | $306,186.21 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,479.00 | $1,107,798.83 | $2,438,150.24 |
| EXPENSES BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | |
| LAND RENT | | | | $189,376.20 | | | | | | $16,150.80 | | $251,342.75 | $456,869.75 |
| SEED | | $304,002.79 | | | | | | | | | | | $304,002.79 |
| FERTILIZER | $55,223.15 | $55,223.15 | | | | | | | | | $99,912.80 | | $210,359.10 |
| CHEMICALS | | | | $61,694.97 | | | | | | | | | $61,694.97 |
| CROP/HAIL INSURANCE | | | | | | | | | | | | $75,000.00 | $75,000.00 |
| FUEL | | $16,602.00 | | | | | | $22,026.84 | | | | | $38,628.84 |
| REPAIRS | | $5,000.00 | | | | | | | | | $7,500.00 | | $12,500.00 |
| LABOR | $4,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $5,000.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $4,500.00 | $5,000.00 | $47,000.00 |
| MACHINERY LEASES | $30,000.00 | | | $25,000.00 | | | | | $30,000.00 | | | | $85,000.00 |
| REAL ESTATE TAXES | | | | | | $12,000.00 | | | | | | $12,000.00 | $24,000.00 |
| FARM INSURANCE | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $72,000.00 |
| UTILITIES | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| DUES & FEES | | $4,125.00 | | $1,625.00 | | | $1,625.00 | $705.38 | $1,800.00 | $1,625.00 | $1,200.00 | | $12,705.38 |
| MISC. | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $15,000.00 |
| INCOME TAXES | | | | | | | | | | | | $89,554.20 | $89,554.20 |
| ANDERSON FARM PAYMENT | | | | $17,151.00 | | | | | | | | | $17,151.00 |
| FARMER MAC PAYMENT | | $45,950.48 | | | | | | | $45,950.48 | | | | $91,900.96 |
| IRS | $790.20 | | | | | | | | | | | | $790.20 |
| IRS-FARMS | | | | | | | | | | | | | $0.00 |
| MNDEED | $1,887.60 | | | | | | | | | | | | $1,887.60 |
| JOHN DEERE | $47,235.00 | | | | | | | | | | | | $47,235.00 |
| CASE | $116,024.04 | | | | | | | | | | | | $116,024.04 |
| AGCO | $7,571.76 | | | | | | | | | | | | $7,571.76 |
| PROFESSIONAL FEES - ACCOUNTING | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $14,400.00 |
| PROFESSIONAL FEES - LEGAL | | | | | | | | | | | | | $0.00 |
| PCB | $401,270.00 | | | | | | | | | | | | $401,270.00 |
| Class 2 General Unsecured Claims | $25,000.00 | | | | | | | | | | | | $25,000.00 |
| Class 3 Sixta Farms Unsecured Claims | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 4 Agronomy Unsecured Claims | $20,000.00 | | | | | | | | | | | | $20,000.00 |
| Input Financing Cost | | | | | | | | | | | | $5,135.00 | $5,135.00 |
| EXPENSES BY MONTH | $769,951.75 | $444,853.42 | $13,950.00 | $308,797.17 | $15,450.00 | $25,950.00 | $15,575.00 | $82,632.70 | $45,750.00 | $31,725.80 | $123,562.80 | $448,481.95 | $2,326,680.59 |
| ENDING CASH | $186,795.55 | $49,628.33 | $341,864.54 | $33,067.37 | $17,617.37 | -$8,332.63 | -$23,907.63 | -$106,540.33 | -$152,290.33 | -$184,016.13 | -$301,099.93 | $358,216.95 | $358,216.95 |

| RICHLAND FARMS CONSOLIDATED | STARTING CASH | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DEC. 2022 TO NOVEMBER 30, 2023 | $ 358,216.95 | $273,264.51 | $126,097.29 | $418,333.50 | $109,536.33 | $94,086.33 | $68,136.33 | $52,561.33 | -$30,071.37 | -$75,821.37 | -$107,547.17 | -$224,630.97 | |
| REVENUE/EXP BY MONTH | | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | TOTALS |
| DEC 2021TO NOVEMBER 2022 | | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME |
| CORN SALES | | $600,000.00 | $306,186.20 | $306,186.21 | | | | | | | | | $1,032,759.98 | $2,245,132.39 |
| GOVERNMENT PAYMENTS | | $110,000.00 | | | | | | | | | | $6,479.00 | | $116,479.00 |
| DIVIDENDS | | | $1,500.00 | | | | | | | | | | | $1,500.00 |
| WIND PAYMENT | | | | | | | | | | | | | $76,539.63 | $76,539.63 |
| TOTAL REVENUE | | $710,000.00 | $307,686.20 | $306,186.21 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,479.00 | $1,109,299.61 | $2,439,651.02 |
| EXPENSES BY MONTH | | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | |
| LAND RENT | | | | | $189,376.20 | | | | | | $16,150.80 | | $251,342.75 | $456,869.75 |
| SEED | | | $304,002.79 | | | | | | | | | | | $304,002.79 |
| FERTILIZER | | $55,223.15 | $55,223.15 | | | | | | | | | $99,912.80 | | $210,359.10 |
| CHEMICALS | | | | | $61,694.97 | | | | | | | | | $61,694.97 |
| CROP/HAIL INSURANCE | | | | | | | | | | | | | $75,000.00 | $75,000.00 |
| FUEL | | | $16,602.00 | | | | | | $22,026.84 | | | | | $38,628.84 |
| REPAIRS | | | $15,000.00 | | | | | | | | | $7,500.00 | | $22,500.00 |
| LABOR | | $4,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $5,000.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $4,500.00 | $5,000.00 | $47,000.00 |
| MACHINERY LEASES | | $30,000.00 | | | $25,000.00 | | | | | $30,000.00 | | | | $85,000.00 |
| REAL ESTATE TAXES | | | | | | | $12,000.00 | | | | | | $12,000.00 | $24,000.00 |
| FARM INSURANCE | | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $72,000.00 |
| UTILITIES | | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| DUES & FEES | | | $4,125.00 | | $1,625.00 | | | $1,625.00 | $705.38 | $1,800.00 | $1,625.00 | $1,200.00 | | $12,705.38 |
| MISC. | | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $15,000.00 |
| INCOME TAXES | | | | | | | | | | | | | $105,940.12 | $105,940.12 |
| ANDERSON FARM PAYMENT | | | | | $17,151.00 | | | | | | | | | $17,151.00 |
| FARMER MAC PAYMENT | | | $45,950.48 | | | | | | $45,950.48 | | | | | $91,900.96 |
| IRS | | $790.20 | | | | | | | | | | | | $790.20 |
| IRS-FARMS | | | | | | | | | | | | | | $0.00 |
| MNDEED | | $1,887.60 | | | | | | | | | | | | $1,887.60 |
| JOHN DEERE | | $47,235.00 | | | | | | | | | | | | $47,235.00 |
| CASE | | $116,024.04 | | | | | | | | | | | | $116,024.04 |
| AGCO | | $7,571.76 | | | | | | | | | | | | $7,571.76 |
| PROFESSIONAL FEES - ACCOUNTING | | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $14,400.00 |
| PROFESSIONAL FEES - LEGAL | | | | | | | | | | | | | | $0.00 |
| PCB | | $401,270.69 | | | | | | | | | | | | $401,270.69 |
| Class 2 General Unsecured Claims | | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 3 Sixta Farms Unsecured Claims | | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 4 Agronomy Unsecured Claims | | $20,000.00 | | | | | | | | | | | | $20,000.00 |
| Input Financing Cost | | | | | | | | | | | | $2,500.00 | | $2,500.00 |
| EXPENSES BY MONTH | | $794,952.44 | $454,853.42 | $13,950.00 | $308,797.17 | $15,450.00 | $25,950.00 | $15,575.00 | $82,632.70 | $45,750.00 | $31,725.80 | $123,562.80 | $462,232.87 | $2,375,432.20 |
| ENDING CASH | | $273,264.51 | $126,097.29 | $418,333.50 | $109,536.33 | $94,086.33 | $68,136.33 | $52,561.33 | -$30,071.37 | -$75,821.37 | -$107,547.17 | -$224,630.97 | $422,435.77 | $422,435.77 |

| RICHLAND FARMS CONSOLIDATED | STARTING CASH | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DEC. 2023 TO NOVEMBER 30, 2024 | $422,435.77 | $337,483.33 | $190,316.11 | $482,552.32 | $173,755.15 | $158,305.15 | $132,355.15 | $116,780.15 | $34,147.45 | -$11,602.55 | -$43,328.35 | -$160,412.15 | |
| REVENUE/EXP BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | TOTALS |
| DEC 2021TO NOVEMBER 2022 | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME |
| CORN SALES | $600,000.00 | $306,186.20 | $306,186.21 | | | | | | | | | $1,032,759.98 | $2,245,132.39 |
| GOVERNMENT PAYMENTS | $110,000.00 | | | | | | | | | | $6,479.00 | | $116,479.00 |
| DIVIDENDS | | $1,500.00 | | | | | | | | | | | $1,500.00 |
| WIND PAYMENT | | | | | | | | | | | | $78,070.42 | $78,070.42 |
| TOTAL REVENUE | $710,000.00 | $307,686.20 | $306,186.21 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,479.00 | $1,110,830.40 | $2,441,181.81 |
| EXPENSES BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | |
| LAND RENT | | | | $189,376.20 | | | | | | $16,150.80 | | $251,342.75 | $456,869.75 |
| SEED | | $304,002.79 | | | | | | | | | | | $304,002.79 |
| FERTILIZER | $55,223.15 | $55,223.15 | | | | | | | | | $99,912.80 | | $210,359.10 |
| CHEMICALS | | | | $61,694.97 | | | | | | | | | $61,694.97 |
| CROP/HAIL INSURANCE | | | | | | | | | | | | $75,000.00 | $75,000.00 |
| FUEL | | $16,602.00 | | | | | | $22,026.84 | | | | | $38,628.84 |
| REPAIRS | | $15,000.00 | | | | | | | | | $7,500.00 | | $22,500.00 |
| LABOR | $4,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $5,000.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $4,500.00 | $5,000.00 | $47,000.00 |
| MACHINERY LEASES | $30,000.00 | | | $25,000.00 | | | | | $30,000.00 | | | | $85,000.00 |
| REPLACEMENT EQUIPMENT | | | | | | | | | | | | $50,000.00 | $50,000.00 |
| REAL ESTATE TAXES | | | | | | $12,000.00 | | | | | | $12,000.00 | $24,000.00 |
| FARM INSURANCE | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $72,000.00 |
| UTILITIES | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| DUES & FEES | | $4,125.00 | | $1,625.00 | | | $1,625.00 | $705.38 | $1,800.00 | $1,625.00 | $1,200.00 | | $12,705.38 |
| MISC. | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $15,000.00 |
| INCOME TAXES | | | | | | | | | | | | $108,665.00 | $108,665.00 |
| ANDERSON FARM PAYMENT | | | | $17,151.00 | | | | | | | | | $17,151.00 |
| FARMER MAC PAYMENT | | $45,950.48 | | | | | | | $45,950.48 | | | | $91,900.96 |
| IRS | $790.20 | | | | | | | | | | | | $790.20 |
| IRS-FARMS | | | | | | | | | | | | | $0.00 |
| MNDEED | $1,887.60 | | | | | | | | | | | | $1,887.60 |
| JOHN DEERE | $47,235.00 | | | | | | | | | | | | $47,235.00 |
| CASE | $116,024.04 | | | | | | | | | | | | $116,024.04 |
| AGCO | $7,571.76 | | | | | | | | | | | | $7,571.76 |
| PROFESSIONAL FEES - ACCOUNTING | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $14,400.00 |
| PROFESSIONAL FEES - LEGAL | | | | | | | | | | | | | $0.00 |
| PCB | $401,270.69 | | | | | | | | | | | | $401,270.69 |
| Class 2 General Unsecured Claims | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 3 Sixta Farms Unsecured Claims | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 4 Agronomy Unsecured Claims | $20,000.00 | | | | | | | | | | | | $20,000.00 |
| Input Financing Cost | | | | | | | | | | | | $2,500.00 | $2,500.00 |
| EXPENSES BY MONTH | $794,952.44 | $454,853.42 | $13,950.00 | $308,797.17 | $15,450.00 | $25,950.00 | $15,575.00 | $82,632.70 | $45,750.00 | $31,725.80 | $123,562.80 | $514,957.75 | $2,428,157.08 |
| ENDING CASH | $337,483.33 | $190,316.11 | $482,552.32 | $173,755.15 | $158,305.15 | $132,355.15 | $116,780.15 | $34,147.45 | -$11,602.55 | -$43,328.35 | -$160,412.15 | $435,460.50 | $435,460.50 |

| RICHLAND FARMS CONSOLIDATED | STARTING CASH | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DEC. 2024 TO NOVEMBER 30, 2025 | $ 454,665.14 | $563,221.30 | $416,054.08 | $708,290.29 | $399,493.12 | $384,043.12 | $358,093.12 | $342,518.12 | $259,885.42 | $214,135.42 | $182,409.62 | $65,325.82 | |
| REVENUE/EXP BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | TOTALS |
| DEC 2021TO NOVEMBER 2022 | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME | INCOME |
| CORN SALES | $600,000.00 | $306,186.20 | $306,186.21 | | | | | | | | | $1,032,759.98 | $2,245,132.39 |
| GOVERNMENT PAYMENTS | $110,000.00 | | | | | | | | | | $6,479.00 | | $116,479.00 |
| DIVIDENDS | | $1,500.00 | | | | | | | | | | | $1,500.00 |
| WIND PAYMENT | | | | | | | | | | | | $78,070.42 | $78,070.42 |
| TOTAL REVENUE | $710,000.00 | $307,686.20 | $306,186.21 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $6,479.00 | $1,110,830.40 | $2,441,181.81 |
| EXPENSES BY MONTH | DEC | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | |
| LAND RENT | | | | $189,376.20 | | | | | | $16,150.80 | | $251,342.75 | $456,869.75 |
| SEED | | $304,002.79 | | | | | | | | | | | $304,002.79 |
| FERTILIZER | $55,223.15 | $55,223.15 | | | | | | | | | $99,912.80 | | $210,359.10 |
| CHEMICALS | | | | $61,694.97 | | | | | | | | | $61,694.97 |
| CROP/HAIL INSURANCE | | | | | | | | | | | | $75,000.00 | $75,000.00 |
| FUEL | | $16,602.00 | | | | | | $22,026.84 | | | | | $38,628.84 |
| REPAIRS | | $15,000.00 | | | | | | | | | $7,500.00 | | $22,500.00 |
| LABOR | $4,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $5,000.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $3,500.00 | $4,500.00 | $5,000.00 | $47,000.00 |
| MACHINERY LEASES | $30,000.00 | | | $25,000.00 | | | | | $30,000.00 | | | | $85,000.00 |
| REPLACEMENT EQUIPMENT | | | | | | | | | | | | $100,000.00 | $100,000.00 |
| REAL ESTATE TAXES | | | | | | $12,000.00 | | | | | | $12,000.00 | $24,000.00 |
| FARM INSURANCE | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $6,000.00 | $72,000.00 |
| UTILITIES | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $24,000.00 |
| DUES & FEES | | $4,125.00 | | $1,625.00 | | | $1,625.00 | $705.38 | $1,800.00 | $1,625.00 | $1,200.00 | | $12,705.38 |
| MISC. | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $1,250.00 | $15,000.00 |
| INCOME TAXES | | | | | | | | | | | | $151,555.00 | $151,555.00 |
| ANDERSON FARM PAYMENT | | | | $17,151.00 | | | | | | | | | $17,151.00 |
| FARMER MAC PAYMENT | | $45,950.48 | | | | | | $45,950.48 | | | | | $91,900.96 |
| IRS | | | | | | | | | | | | | $0.00 |
| IRS-FARMS | | | | | | | | | | | | | $0.00 |
| MNDEED | | | | | | | | | | | | | $0.00 |
| JOHN DEERE | | | | | | | | | | | | | $0.00 |
| CASE | | | | | | | | | | | | | $0.00 |
| AGCO | | | | | | | | | | | | | $0.00 |
| PROFESSIONAL FEES - ACCOUNTING | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $14,400.00 |
| PROFESSIONAL FEES - LEGAL | | | | | | | | | | | | | $0.00 |
| PCB | $401,270.69 | | | | | | | | | | | | $401,270.69 |
| Class 2 General Unsecured Claims | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 3 Sixta Farms Unsecured Claims | $50,000.00 | | | | | | | | | | | | $50,000.00 |
| Class 4 Agronomy Unsecured Claims | | | | | | | | | | | | | $0.00 |
| Input Financing Cost | | | | | | | | | | | | $2,500.00 | $2,500.00 |
| EXPENSES BY MONTH | $601,443.84 | $454,853.42 | $13,950.00 | $308,797.17 | $15,450.00 | $25,950.00 | $15,575.00 | $82,632.70 | $45,750.00 | $31,725.80 | $123,562.80 | $607,847.75 | $2,327,538.48 |
| ENDING CASH | $563,221.30 | $416,054.08 | $708,290.29 | $399,493.12 | $384,043.12 | $358,093.12 | $342,518.12 | $259,885.42 | $214,135.42 | $182,409.62 | $65,325.82 | $568,308.47 | $568,308.47 |

**EXHIBIT C**

## SUMMARY OF UNENCUMBERED ASSETS

| | |
|---|---|
| Richland Farms, Inc. | 0.00 |
| Richland Eggs, Inc. | 0.00 |
| Richland Farms Partnership | |
|     Claim Against Syngenta | 80,000.00 |
| Sixta Farms LLC | 601,720.12 |
| Richland Agronomy, Inc. | 77,400.00 |

**IMPACT OF DEBT OWED TO PLAINS COMMERCE BANK
ON LIQUIDATION ANALYSES OF ALL ENTITIES**


Plains Commerce Debt                                    7,614,597.21

Less:
      Value of Richland Farms, Inc., Real & Personal
           Property Pledged as Collateral        4,764,813.08
      Value of Richland Eggs, Inc., Real Property
           Pledged as Collateral            623,698.94
      Value of Richland Farms Partnership Personal
           Property Pledged as Collateral        <u>808,127.29</u>
                                                                  (6,196,639.31)

Remaining Debt to Plains Commerce - unsecured          1,417,957.90

**LIQUIDATION ANALYSIS**
**Richland Farms Partnership**

Equipment (pledged to CNH)

| | |
|---|---:|
| CX 210 Case Excavator | 75,000.00 |
| Case IH S.P. Sprayer | 197,000.00 |
| Elmer's Transfer Tracks | 50,000.00 |
| Case IH Field Cultivator Model 875 | 47,000.00 |
| Case IH Combine #9240 | 253,000.00 |
| | 622,000.00 |

First Secured Position Held by CNH Industrial
    Capital America, LLC                    (627,000.00)

Value After First Secured Position            0.00

Equipment (pledged to Agco)
    2012 ACH 8400 Terragator               89,000.00

First Secured Position Held by Agco Finance LLC    (34,261.43)

Value After First Secured Position        54,738.57

Additional Equipment (pledged to Plains Commerce Bank)

| | |
|---|---:|
| Stud King Header Trailer | 5,000.00 |
| Case IH MaDon 40' 2001 model | 32,000.00 |
| Tractor White 2-180 | 3,210.00 |
| Snowblower Loftness | 4,671.00 |
| JD Gator | 1,800.00 |
| Forklift 2014 | 17,500.00 |
| Older tractor JD | 3,500.00 |
| Tractor Oliver 660 | 7,000.00 |
| Bobcat S185 ('11) | 12,000.00 |
| Trailer Mauer headcart(2) | 6,000.00 |
| Brent 1594 Grain Cart w/tracks ('13) | 60,000.00 |
| McDon 75 45' Head w/JD Hookup | 43,000.00 |
| Ag Chem Terrigator 1603 | 4,262.00 |
| Seed Tender custom | 6,841.00 |
| 2015 JD 40' Drill | 55,000.00 |
| 12' Box scraper | 3,800.00 |
| Rock Bucket MDS/Grable fork | 3,000.00 |
| JD 725 | 1,984.00 |
| Rock picker Schultz | 10,000.00 |
| Land Roller 60' Riteway FT85 (12') | 45,000.00 |
| Plow IHC 6-18 | 1,138.00 |

| | |
|---|---:|
| Rock Picker Schultz | 5,355.00 |
| Drag | 850.00 |
| 2010 Harrow 70ft ('11) | 29,000.00 |
| Rotary Hoe Yetter 41' #3541(12') | 12,000.00 |
| Field Cultivator JD 875 16R 22" (12') | 3,189.00 |
| Wishek Disc #862 38" ('13) | 34,000.00 |
| Lawn mower JD | 3,580.00 |
| Mower front deck JD 1435 | 6,221.00 |
| Spreader Hydrapush JD 455 | 2,500.00 |
| Weed eater w/attachments | 306.00 |
| Mower JD-12 26' | 5,905.00 |
| Auger 10x71 | 4,000.00 |
| Screener Lanners | 4,538.00 |
| Auger Feteral 10x100 99' | 4,486.00 |
| Vac Walinga #614 99' | 6,000.00 |
| Vac Walinga #3510 | 2,393.00 |
| Brandt Conveyor #1545 gas 45' | 16,000.00 |
| Brandt Conveyor 45' Electric ('10) | 11,000.00 |
| Wagon J&M 325 bu. | 900.00 |
| Bale spears (2) | 620.00 |
| Sandblaster | 1,114.00 |
| Air compressor mounted w/service truck | 2,500.00 |
| Power Washer | 5,000.00 |
| Shop Equipment | 21,676.00 |
| Hydraulic hose maker Gate (13') | 3,543.00 |
| 2015 Irrigation Probes (5) | 12,000.00 |
| SSDtool bar Fert/chemical in row | 15,381.00 |
| Trimble system 2 rtk | 29,001.00 |
| Ag camera | 513.00 |
| Auto polit kit | 2,638.00 |
| GPS Equipment | 7,000.00 |
| JD Receiver CV2 Screen/Greenstar | 7,000.00 |
| FM Rdios - digital sys ('11) | 20,000.00 |
| Ag system nurse tank | 1,261.00 |
| Water tanks various sizes (6) | 1,884.00 |
| Fertilizer Plant scale | 429.00 |
| Aerator 60' of tubes 2003 | 127.00 |
| Concrete legos grain storage 240 | 2,903.00 |
| Office Equipment | 4,724.00 |
| Office Computer | 4,000.00 |
| Utility Wagon 2004 | 500.00 |
| 2004 snowmobile F7 | 1,251.00 |
| Doyle bender | 13,086.00 |
| Flatbed | 500.00 |
| | 637,580.00 |

Additional Personal Property (pledged to Plains Commerce Bank)

| | | |
|---|---|---|
| Fuel | 5,000.00 | |
| Propane | 9,549.00 | |
| Chemical | 11,319.00 | |
| 20 T Zinc | 548.00 | |
| 25 T 10-34-0 Fertilizer | 10,250.00 | |
| Accounts Receivable | 8,000.00* | |
| Capital Credits Through CHS | | |
|     (face amount 11,495.22) | 5,619.72 | |
| Capital Credits Through Central Crop | | |
|     Consulting, Inc. | | |
|     (face amount 196.87) | *De Minimis* | |
| Fertilizer Inventory | 54,000.00 | |
| Seed Inventory | 11,523.00 | |
| | 115,808.72 | |
| | | 808,127.29 |

Plains Commerce Bank Debt                  $7,614,597.21

Unencumbered Value in a Chapter 7 Liquidation         $0.00

Additional Personal Property – Non-exempt unsecured
    claim against Syngenta                     80,000.00

Pursuant to Class 2 of the Plan, Richland Farms Partnership, along with its general partners Richland Farms, Inc. and Richland Eggs, Inc., will pay $225,000 to its unsecured creditors, which is in excess of the Chapter 7 liquidation value of the assets.

\*     Not included is a $14,059.48 claim against Pamela Kroese who has an unsecured claim against Debtor in excess of the amount of the Debtor's claim and, thus, a right of offset.

# LIQUIDATION ANALYSIS
## Richland Farms, Inc.

Approximately 547.56 acres (499.87 acres tillable) in Sections 20, 33 and S 1/2 of W 1/2, Section 21, Township 109, Range 45, Lincoln County, Minnesota.

| | |
|---|---|
| Land | 2,599,324.00 |
| Buildings | 1,400,000.00 |
| | 3,999,324.00 |

First Mortgage to CGB AgriFinancial Services     (966,592.84)

Value After First Mortgage     3,032,731.16

Approximately 240.27 acres (236.36 acres tillable) in Section 21, Township 109, Range 45, except S 1/2 of SW 1/4 thereof, Lincoln County, Minnesota     1,229,072.00

Total Value Land After First Mortgage        4,261,803.16

Equipment (pledged to Deere & Co.)

| | |
|---|---|
| Brent 1596 Avalanche 1500 Grain Cart | 32,500.00 |
| 2013 JD 2410 Chisel Plow | 12,600.00 |
| JD 2210 Cultivator | 24,700.00 |
| 2012 JD 2210 Cultivator | 24,700.00 |
| JD 618 C Combine Cornhead | 99,906.00 |
| Unverforth 400 2015 Seed Cart/Tender | 9,200.00 |
| 2016 JD BCU Planter | 114,800.00 |
| | 318,306.00 |

First Secured Position Held by Deere & Co.     (213,734.56)

Value After First Secured Position     104,571.44

Additional Equipment

| | |
|---|---|
| 1995 Peterbuilt Semi #4 | 13,000.00 |
| 1993 Peterbuilt Semi #5 | 11,000.00 |
| 1988 International Semi #38 | 18,000.00 |
| 1997 Peterbuilt Semi Day cab #12 | 17,000.00 |
| 2001 Peterbuilt Semi Day cab #16 | 14,000.00 |
| 2013 Doyle Fert Truck | 40,000.00 |

| | |
|---|---|
| 1998 Sterling Truck | 9,000.00 |
| 1999 Volvo Truck | 9,000.00 |
| 2002 Wilson Hopper Trailer | 12,000.00 |
| 2002 Ford Service Truck | 15,000.00 |
| 1979 International Truck and Bed | 262.00 |
| 1992 Fuel Truck | 6,500.00 |
| 2012 GMC | 18,000.00 |
| 1989 Chevy Pickup | 1,500.00 |
| 1995 Mazda Pickup | 2,000.00 |
| 2011 Ford F350 Pickup | 32,000.00 |
| 1994 Wilson 45' Flatbed Trailer | 13,000.00 |
| 2004 Wilson Hopper Trailer | 12,000.00 |
| 1983 Merrit Hopper Tailer | 4,000.00 |
| 1994 Refer Trailer for Spraying | 10,000.00 |
| 2012 Gooseneck Trailer | 4,500.00 |
| 1996 Trailmobile Van Trailer | 1,000.00 |
| 1985 Frue Van Trailer | 1,000.00 |
| 1991 STOU Van Trailer | 1,000.00 |
| 2012 Wilson Hopper Trailer | 18,000.00 |
| DCT Utility Trailer | 1,500.00 |
| 2007 Peterbuilt Truck 14 and 2014 Wilson Grain Trailer | 58,000.00 |
| | 342,262.00 |

Additional Personal Property
Capital Credits Through CHS

| | |
|---|---|
| (face amount 57,384.20) | 28,051.48 |
| Interest in S.D. Soybean Processors LLC | 28,125.00 |
| | 56,176.48 |

| | |
|---|---|
| Total Value of Personal Property After Satisfaction of First Secured Position Held by Deere & Co. | 503,009.92 |
| Total Value of Real Estate and Personal Property After Reducing by First Mortgage and Security Interest | 4,764,813.08 |
| Plains Commerce Bank Debt | $7,614,597.21 |
| Unencumbered Value in a Chapter 7 Liquidation | $0.00 |

**LIQUIDATION ANALYSIS**
**Richland Eggs, Inc.**

Approximately 160 acres (148.69 acres tillable)
     consisting of SE 1/4, Section 21, Township
     109, Range 45, Lincoln County, Minnesota.

| | | |
|---|---|---|
| Land | 773,188.00 | |
| Buildings | 45,000.00 | |
| | 818,188.00 | |
| Contract for Deed Vendee | (194,489.06) | |
| Value After Contract for Deed | 623,698.94 | |
| Plains Commerce Bank Debt | | $7,614,597.21 |
| Unencumbered Value in a Chapter 7 Liquidation | | $0.00 |

**LIQUIDATION ANALYSIS**
**Sixta Farms LLC**


Assets
    Checks                                436,837.84
    2018 Grain                        384,114.42
    2019 Crop Insurance        109,771.20
TOTAL                                        930,723.46

Less Expected Administrative Expenses
Incurred in a Chapter 7 Liquidation

    Federal and state taxes
        estimated at 30%           279,217.15
    Trustee's Commission       49,786.19
                                       (329,003.34)
Liquidation Value                          601,720.12

Pursuant to Class 3 of the Plan, Sixta Farms, LLC will pay $700,000 to its unsecured creditors, which is in excess of the liquidation value of the assets.

# LIQUIDATION ANALYSIS
## Richland Agronomy, Inc.

Part of NW 1/4 of SE 1/4 and SW 1/4 of NE 1/4,
   Section 8, Township 109, Range 45, Lincoln
   County, Minnesota                                     75,000.00

Lots 8 and 9, Block 2, Matthew's Addition to the
   City of Lake Benton                                    2,400.00
                                                         77,400.00

         Federal and state taxes
            estimated at 30%                             Unknown
         Real Estate Commissions
         And closing costs (est. 10%)                    $7,700.00
         Trustee's Commission                             7,100.00

Liquidation Value                                        $62,600.00

Pursuant to Class 4 of the Plan, Richland Agronomy, Inc. will pay $80,000 to its
unsecured creditors, which is in excess of the liquidation value of the assets.